JOHN M. ARBUCKLE ET AL. v. EDMUND D. SMITH AND CHARLES L. TURRELL.

*Contract—Parol evidence—Trial.*

1. After the door has been opened wide by the admission of testimony without objection, there can be no propriety in shutting out the remainder of the testimony resting on the same grounds.

2. A verbal contract, made on a verbal understanding that it should conform to the terms of a written paper, does not differ from any other verbal contract, and may be shown to have agreed with the writing or differed from it, according to the facts.

Error to Ingham. (Lane, J., presiding.) Argued April 4, 1889. Decided April 19, 1889.

*Assumpsit.* Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Hammond & Lee,* for appellants.

*Frank L. Dodge,* for defendants.

CAMPBELL, J. This suit was brought on a promissory note made by defendant Smith, as principal, and defendant Turrell, as surety, dated July 5, 1886, at Fowlerville, for $350, due November 1, 1887, with interest at 8 per cent. It appeared on the trial, without objection,

that this note was part of the consideration for the pur-
chase by defendant Smith of a traction engine from plaint-
iffs. The so-called agreement referred to in the record,
so far as pertinent here, was as follows: It was in a some-
what peculiar and confused shape, being in general pur-
port an order on the firm of Russell & Co., of Massillon,
Ohio, for the engine, and an agreement to accept it on
certain conditions, which were to pay freight and
charges, and on arrival of the articles to pay $1,200, as
follows:

"Cash, July 1, 1886, $200; our note due Nov. 1, 1886,
$300.00; our note due Nov. 1, 1887, $350.00; our note
due Nov. 1, 1888, $350.00. Notes to be dated on delivery
of goods, to bear interest from July 1, 1886, at seven
per cent., to be given on your blanks, payable at Fowler-
ville Bank, Mich., and we agree to give as security a
chattel mortgage or trust-deed on the goods purchased;
and, further, I hereby agree to sign the last two notes
above named."

At this point in the document occurs Turrell's signa-
ture. Then follows the rest of the paper, signed by
defendant Smith. This provides that the order is given
subject to the acceptance of Russell & Co., and further
that no promise of any agent, employé, or attorney "in
respect to the payments, security, or to the machinery
named," should be binding unless in writing, and ratified
by home or branch office, and that title should not pass
until settlement is concluded and accepted by Russell &
Co. This paper is not signed by Russell & Co., or by
any one on their behalf. There are several further con-
ditions not bearing on this controversy. Russell & Co.
are the only persons named or referred to in the paper.
Arbuckle, Ryan & Co., are not mentioned in it. The
contract provided that the notes should be given on
Russell & Co.'s blanks, and they are throughout made the
parties to the agreement. But they did not sign it, and

no one else signed it for them.    This becomes significant
in connection with the points raised on the trial.    The
bargain claimed to have been made was with the firm of
Arbuckle, Ryan & Co., of Toledo, Ohio, through one of
their local agents in Michigan.    The engine was delivered
to Smith early in July, 1886, but he paid nothing on the
price.    The note sued on is made payable to Arbuckle,
Ryan & Co., and is treated as one of the two notes for
$350 each, which were by the order to be given by Smith
and Turrell.    It is therefore of some consequence to con-
sider, the further fact that certain important warranties
and undertakings appear in this paper on the part of
Russell & Co., and not on the part of any one else.

Proceeding, now, to the contest on trial, we find it
difficult to get at all that occurred, as the bill of exceptions
is confused, and not made up in the order of trial.    But
this much appears.    The note was proved, and defend-
ants, without objection, showed that Smith got the
engine on the so-called order before described.    They
then showed an agreement or understanding between
plaintiffs' agents and Turrell that the engine should not
be given up to Smith until he had paid down $200.
They showed that this payment was not made or exacted,
and it is not disputed that the surety could object to
any departure of this kind.    This is the only point on
which the record shows exceptions to have been taken,
and we must presume that upon all other matters the
case is not open to complaint.    The objections rest upon
the ground that the testimony varies a written contract,
and the writing must govern.    There was also (but too
late to reach most of the testimony) a suggestion that
some part of it was not within the notice of defense.
Had this objection been taken earlier, and before any
testimony was let in, an amendment would have been
allowed, and it is plain that no one was taken by sur-

prise. But after the door has been opened wide, without objection, there can be no propriety in shutting out the remainder of the testimony resting on the same grounds.

It does not appear very clearly whether the alleged agreement, requiring $200 to be paid down, was before or simultaneous with or after the filling up of the order, but it is not claimed to have been after. But it corresponds precisely with the tenor of the order itself, and, whether admissible or not had there been a variance, the testimony cannot be regarded as at all affecting the result. But there is a stronger reason why it was proper in this case. By the terms of the so-called order it was to have no effect until accepted or approved by Russell & Co. Under the statute of frauds, a chattel worth $1,200 cannot be made the subject of an unsigned and unwritten bargain. Until Russell & Co. agreed to sell the engine, there could be no consideration for any promise to take and pay for it. This paper contained other obligations on the part of Russell & Co., and without their signature it was imperfect. It does not appear that they knew anything about it. They were not bound by it, and until they became so it could bind no one else. Even had Russell & Co. been plaintiffs and payees of the note in question, the delivery and acceptance of the engine would, under these circumstances, have been the beginning, and not the end, of any bargain, and the order, being no contract, would leave parties at liberty to make any arrangement they pleased; and if anything was done which was not contemplated by the surety they would have acted in their own wrong.

But all the testimony in this case goes upon the theory that the contract was made with plaintiffs, and not with Russell & Co. So far as plaintiffs are concerned, they never had any written contract relations with defendants. A verbal contract, made on a verbal understanding that

it should conform to the terms of a written paper, does not differ from any other verbal contract, and may be shown to have agreed with the writing, or differed from it, according to the facts. All that can be inferred from this record (and that inference is not much more than conjectural) is that the plaintiffs dealt in Russell & Co.'s machinery, and could only furnish it on such terms as Russell & Co. chose to require, so that when they wished to sell to Smith they adopted Russell & Co.'s forms as the basis of their dealings. But, as already suggested, there was no written contract with Russell & Co., and none with plaintiffs, and nothing calling for any application of the rules relating to parol evidence as bearing on written contracts.

The questions raised and argued are on this record purely speculative. We cannot pass on any supposed errors that are not apparent on the record, and in that we find nothing to reverse the judgment, which must be affirmed, with costs.

The other Justices concurred.