Insurance Co. v. Stone.

THE PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK v. GEORGE W. STONE.

No. 11,311.   (58 Pac. 986.)

1. INSURANCE—*Payment of Premium to Agent—Contract Made and Accepted.*  When the general agent of an accident insurance company receives an application for a policy of insurance, accompanied by the required cash premium, and transmits the application without the premium to the secretary of the company, whose duty is to receive both and to approve or reject the application, and such secretary does not disapprove it but holds it to await a remittance of the premium from the general agent, and fails to notify the applicant of his reason for so doing, and the only reason for not formally accepting the application and issuing the policy is the secretary's desire to delay until the general agents remits the premium, *held,* that the payment of the premium to the general agent is in law a payment to the company itself, and the retention of it and the application will be construed as an acceptance of the latter and the making thereby of the insurance contract.

2. ———— *Delivery of Policy—Joinder of Causes of Action.*  When a contract of insurance has been agreed on the execution of a policy is not essential to its taking effect unless part of the contract be that it shall not take effect until the execution and delivery of that instrument; and, except in such cases, the insured may bring suit upon the agreement before the issuance of the policy, if a loss has occurred in the meantime, and may also join in the suit a cause of action in equity for a specific performance of the contract to issue a policy.

3. ———— *Statements by Agent—Company Estopped.*  When an insurance company receives, and in fact accepts, an application for insurance, but does not do so in the usual and formal way, and receives and retains the cash premium accompanying the application, but delays the issuance of a policy to the applicant until an accounting can be had with its agent in respect to the premium paid, and in the meantime another agent of the company, whose duty would be to receive the policy if issued and deliver it to the insured, or to receive back from the company the premium paid upon the application in case it were to be rejected and to return it to the applicant, informs him that his application has been accepted and that a policy will presently be issued to him, and such applicant relies on such statements and, for that reason, fails to take out other like insurance, the company will be held estopped, because of the statements so made, to deny the making of the insurance contract.

Error from Reno district court; MATTHEW P. SIMPSON, judge.  Opinion filed November 11, 1899.  Modified.

*R. W. Blair*, for plaintiff in error.

*Quinton & Quinton*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action on a contract of accident insurance.  No policy of insurance was issued but an application for one was made and premium therefor paid.  The application and premium were accepted, as the defendant in error claims.  The suit was in effect one for specific performance by compelling the issuance of the policy, and for a money judgment in accordance with its terms for a loss which had been sustained.  The plaintiff prevailed in the court below and the defendant prosecutes error to this court.

The facts are that the plaintiff in error is a corporation engaged in the business of accident insurance.  One Hastings was its general agent for the state of Kansas, and one Phelps was a local agent appointed by Hastings.  On October 25, 1895, the defendant in error made a written application to Phelps, the local agent, for a policy of accident insurance, paying at the same time the required premium.  This application was made on one of the company's printed forms, and was denominated: "Application for Ten Thousand Dollar Combination Policy."  According to the explanatory literature put out by the company, and according to such kind of policy when issued, the company obligated itself to pay $10,000 for death by accident, and lesser sums for accidents resulting in

4—61 KAN.

the loss of limbs or other members of the body. For accidents resulting in any disability which would prevent the insured from following his ordinary occupation, varying sums as weekly indemnity for limited periods were promised.

The application and cash premium were forwarded by Phelps, the local agent, to Hastings, the general agent, who in turn transmitted the application to the home office of the company at New York, but did not remit the premium. The application contained the following stipulation : "I agree that . . . this application shall not be binding upon the company until accepted by the secretary, and that the policy shall not be in force until actually issued from the office in New York." In the ordinary course of business the policy should have been issued by the company and received by the applicant within a week from the date of the application. Failing to receive it within the time, the applicant called twice on Phelps, the agent, and inquired concerning it. Phelps told him that he did not understand the cause of the delay, but expressed a belief that the policy would presently be received, and said that he would inquire and inform him about it. The applicant called on the agent a third time and again made inquiries concerning the matter. The agent informed him " that he had heard from the company about the application ; that it had been accepted and the policy would be forwarded in a day or two." The applicant contemplated going away, and to this statement of the agent replied, " All right ; I will go on my trip then. When that policy comes, you take care of it until I call for it." To this the agent assented. If the applicant had not been assured of the acceptance of his application and the issuance of a policy he would have procured like insurance

elsewhere before going on his trip.    He went on the contemplated journey, and November 20, 1895, while absent, was accidentally injured, sustaining the loss of one of his feet.    On November 25, 1895, the company, in ignorance of the occurrence of the accident, wrote out its policy of that date and forwarded it to its general agent, but, learning of the accident, rescinded and never delivered it.

The evidence quite satisfactorily showed that Hastings, the general agent, had not been prompt in this and other like instances in forwarding the premiums paid by applicants, but was in the habit of forwarding the applications and retaining the premiums for a time.    To this practice the company objected, but at first accepted the applications, issued policies thereon, and charged the unremitted premiums to Hastings. It finally, and at about the time in question, declined to extend further credits of the kind to him, but, while retaining the applications and failing to reject them, withheld the issuance of policies on them until the receipt of the premiums therefor.    The formal acceptance of Stone's application and the issuance of a policy to him were delayed on account of the above-mentioned irregularity of business between the company and its agent Hastings.    A letter written to the state superintendent of insurance by the secretary of the company explained the matter in the following language :

"The facts of the case connected with the issue of the policy to Mr. Stone are these :

" The application was made by him to a subagent of Mr. C. E. Hastings ( one Phelps) on the 28th day of October last, and the application was forwarded by Phelps to Hastings.    Hastings, in turn, forwarded the application to the company, but inasmuch as the company had had a good deal of trouble with Hastings

on account of his failure to account to us for premiums collected by him, and he (Hastings) had been advised that no policies would be issued except where the premiums accompanied the application, the policy was not issued, and he (Hastings) was informed that it would be held in abeyance until the receipt of a premium, in case such a premium had been paid by the applicant; some weeks thereafter the money was received, and the policy was on the same day issued to. Mr. Stone and forwarded to Hastings for delivery.
KIMBALL C. ATWOOD, *Secretary.*"

It was the practice of the company, in case of the acceptance of an application, to forward the policy to the local agent for delivery to the insured, and in case of the rejection of an application to notify the insured through the local agent and to return the premium to him for delivery back to the applicant.

The evidence in the case leaves no room to doubt but that the secretary did not reject the application of defendant in error, but, on the contrary, accepted it. According to his own statement made to the superintendent of insurance, the issuance of the policy on the application was delayed—"held in abeyance," to use his language—until the receipt of the premium from the company's general agent. The payment of this premium to the company's general agent was a payment to the company itself. It was as efficacious to complete the contract upon the part of the applicant as though it had been paid to the secretary himself. General agents of insurance companies in many particulars can do as much as the company itself, and their acts within the scope of their authority are as binding on the company as though performed by its chief executive officers or its managing board of directors. Hastings had authority to receive the premium. The secretary knew he had received it, or was bound to know it. The receipt of this premium by Hastings

was the receipt of it by the company itself.   It could not put the applicant at a disadvantage in the negotiation because of the fault of its general agent.   Such fault was in law its own fault.   It should have rejected the application and not have undertaken to hold it in suspension until its own agent had corrected his delinquency.   The case was as though the company had received and was itself retaining the premium paid.   It could not lawfully retain the premium and hold the application in abeyance.   The retention of the premium and its failure to reject the application, its holding of it while it took time to adjust a matter of concern only to itself, were tantamount to an acceptance of the application and an agreement to issue the policy.

It is a general rule that when a contract of insurance has been agreed on the execution of a policy is not essential to its validity, unless part of the contract be that it shall not take effect until the execution and delivery of that instrument.   Except in cases where by agreement of the parties the contract is to be completed only by the execution and delivery of the policy, the insured may bring suit on the agreement, if a loss has occurred in the meantime.   (*Keim et al. v. Home Mutual Fire & Mar. Ins. Co. of St. Louis*, 42 Mo. 38 ; *Insurance Co. v. Colt*, 87 U. S. 560 ; *Tayloe v. Merchants' Fire Ins. Co.*, 9 How. 390 ; *The City of Davenport v. The Peoria Marine and Fire Insurance Co.*, 17 Iowa, 276 ; *Hallock v. Insurance Co.*, 26 N. J. Law, 268.)

But it is said that the applicant stipulated that "the policy shall not be in force until actually issued from the office in New York."   This stipulation is of course valid and binding on the insured.   Under it the policy cannot be regarded as in force until issued ;

but the policy when issued would not be the contract between the parties, under the doctrine of the above-quoted decisions ; it would be only evidence of the contract.    It may be that a suit could not be brought upon it as a policy until it had been issued, but this is not saying that a suit could not be brought to enforce specifically the agreement to issue the policy, and in the same suit, as part of the appropriate relief, recover on it as though it had been formally issued. Under the rules of the code for the joinder of legal and equitable causes of action arising out of the same transaction or transactions connected with the subject of the action, it is permissible to sue for the specific performance of an agreement to execute a written instrument and also for the recovery of money due by the terms of the instrument as ordered to be executed.

It is claimed that the court erred in the admission of testimony as to the statement to the insured by the local agent Phelps, that he had heard from the company, and that it had accepted the application and would forward the policy in a day or two, and also claimed that the court erred in its instruction to the jury that these statements, if made, and so relied on by the applicant that he failed to procure other like insurance, constituted an estoppel against the company.    It is argued that these statements were by an agent whose powers were limited and special, and that the company was not bound by them.    The case in this particular is not within the rule of the decisions cited by counsel for plaintiff in error.    The local agent did not assume to waive anything in disregard of or even within the limitations of his authority.    He did not assume to waive or modify any of the conditions or terms of the insurance contract.    He did not assume to waive anything in the company's behalf.    The idea

of waiver is not predicable of anything he did.   He only assumed to impart information to the insured which he said he had received from the company as to its acceptance of the application and the completion of the insurance contract.   As before stated, it was the custom of the company to deliver policies on accepted applications through its local agents and also through them to return premiums paid on applications which it rejected.   This qualified the agent to impart information in respect to those things which were to be done by him.   The giving of information in respect to a thing which, when done, the company would entrust to him to do came within the scope of his authority.   The decision of the United States circuit court of appeals in *The International Trust Co. v. Norwich Union Fire Ins. Soc.*, 17 C. C. A. 608, 71 Fed. 81, is in harmony with the views we have expressed.   In that case it was said :

" The statement was made in the line of his duty, not in answer to an idle inquiry, but in response to a question asked by a policy-holder, who was interested in knowing if a certain policy had been renewed and continued in force.   It does not follow that, because a person is employed by an agent of an insurance company rather than by the company itself, none of such person's acts or representations are binding on the company.   It is customary for agents having charge of important agencies to employ persons to perform clerical and much other work in their office, and to assist them generally in the discharge of the various duties which such agents have to perform. The business of insurance could not well be transacted without such assistance, and all insurance companies are doubtless well aware of the practice of employing them.   It results from this well-known business usage that acts done and information given by such subordinate employees in the line of their duty should be held binding upon the companies which they represent."

In the case in which the above rule was declared, it appeared that the general agents of an insurance company had received from a person money which they had good reason to believe was paid for the renewal of an existing insurance policy, although it could not be said for a certainty that such was known to them. A bookkeeper in the office of the general agents informed the applicant that his policy had been renewed and insurance extended. On this state of facts the court held the company estopped to deny, after the occurrence of a loss, the renewal of the policy, remarking as follows:

"On this state of facts the conclusion is inevitable that the defendant company cannot be heard to say that the policy in question was not renewed, whatever may have been its intention in that regard. When the agents of an insurance company, who are duly authorized to solicit and make contracts of insurance, deliberately represent to the assured that a given policy issued by the company has been renewed, and subsequently receive and appropriate money which they have good reason to believe is paid to cover the cost of such extended insurance, the company will be estopped to allege, after a loss has occurred, that the policy in question was not renewed. To hold otherwise would be to lend judicial sanction to a fraud."

The case for our decision is fully as strong in point of fact against the company as the one cited. In this case the managing agent of the company had good reasons to believe that the premium for insurance had been paid to the general agent, Hastings. As heretofore shown, it was in theory of law paid to the company itself. While retaining the application for insurance and likewise the cash premium, another agent, whose business it was to deliver the policy when received or to return the premium if unaccepted, and who by virtue of his agency in such matters was

clothed with authority to impart information to the interested person in respect to those duties which the company cast upon him, informed such person that the application had been accepted, that his policy would presently be forwarded, and that he might safely go about his business. This information, under these circumstances, if relied on, constituted an estoppel.

Many other assignments of error besides those involving the questions above decided have been made. They are all of a minor nature and some of them admitted by counsel to be unimportant or cured or corrected by subsequent proceedings. We have given attention to all of them. None of them, however, possesses substantial merit.

The court rendered judgment for $200 for weekly indemnity under a clause in the policy which promised it for disability preventing the insured from following his ordinary occupation. The policy, rightly construed, does not make this sum collectable in addition to the specific sum promised for the loss of the limb. The judgment of the court below will be modified by abating it to the extent of the sum allowed for weekly indemnity. In all other respects it will be affirmed.