PHILLIPS v. UNION CENT. LIFE INS. CO.

(Circuit Court, W. D. Georgia, S. D. February 21, 1900.)

1. LIFE INSURANCE—CONTRACT—UNDELIVERED POLICY.

An applicant for life insurance was duly examined and recommended for insurance, and the application forwarded for acceptance by the company. Subsequently a part of the first premium was paid, and a note given for the remainder, upon an agreement with the agent that, if ac-

101 F.—3

cepted, the insurance should be from that date. The application was accepted, and a policy issued bearing date in accordance with such agreement, which was forwarded to the agent of the company, who notified the applicant of such acceptance by mail, and that he would call and deliver the policy, but before he had done so the applicant died. *Held*, that there was a completed contract of insurance.

2. SAME.

The fact that an applicant for life insurance desired the policy to be made payable to a particular person, while, as issued, in conformity to the written application, it was made payable to the legal representatives of the insured, does not constitute a variance of which the company can take advantage to defeat the contract.

3. SAME—EXAMINATION OF INSURED.

A contract of life insurance is not vitiated by the failure of an agent of the company to make a personal examination of the applicant as required by its rules, where a policy was issued upon a proper examination by the medical examiner, and where it does not appear that the insured had knowledge of the requirement.

4. SAME—ACTION ON POLICY—LIMITATION.

By a verbal understanding between an applicant for life insurance and the agent of the company, the policy was to be made payable to a particular person; but the written application required it to be made payable to the legal representatives of the applicant, and it was so issued. Before it had been actually delivered, but after it had become effective, the insured died; and the company then refused to deliver it to her representatives, and removed it from the state. In the belief that the policy had been written in accordance with the verbal agreement, an action was brought thereon in behalf of the supposed beneficiary, and the time fixed by the policy within which an action was required to be commenced thereon expired before the mistake was learned by those in interest, by the production of the policy in court. *Held*, that the company was estopped to plead the limitation in defense to a suit in equity instituted within a reasonable time thereafter by the legal representative of the deceased to compel delivery of the policy and to recover thereon.

This was a suit in equity to compel the delivery of a life insurance policy, and to recover thereon, brought by the administrator of the insured.

Dessau, Harris & Birch, Pope S. Hill, Hardeman, Davis & Turner, and Hardeman & Moore, for complainant.

Guerry & Hall and Robert Ramsey, for respondent.

SPEER, District Judge. In this case there was plainly a contract of insurance. The deceased, whose life was insured, had made application for insurance, was duly examined, and was recommended for insurance. The policy was dated the 1st day of May. Thereafter, on the 8th day of May, her grandfather paid a part of the first premium, taking a receipt therefor, and gave a note for the balance due. In the receipt thus taken it was stipulated that, if the application was accepted, she was to be insured from that date. The defendant company thereafter issued a policy, which was dated May 1st, in accordance with this understanding, and sent it to its general agent at Macon. The agent notified the applicant through the mail that it had been accepted, and apprised her of his intention to call and deliver it in a few days. This, in my opinion, completed the contract to that extent that the company was bound. While the policy was in the hands of the agent at Macon, and before it was

actually delivered to her, or any one for her, she died. Now, it appears in the testimony that the grandfather of Willie A. Pugh, who had represented her in the negotiations with the defendant company, wished that the policy should be made payable, not to the heirs and administrators of the applicant, but to her younger sister; and he was of the opinion that it was issued in that form until it was produced in court. It now turns out that it was made payable to her legal representatives. This was a variance between the terms of insurance as proposed by Mr. Phillips and as they were expressed in the policy, and it is insisted, therefore, that the minds of the insured and insurer never met upon this contract of insurance, and it is, therefore, no contract. While it may be true that Willie A. Pugh might have had the terms of the policy corrected in accordance with her wishes if she had lived, yet, having died, it is, in my opinion, not competent for the insurance company to take advantage of its own mistake. The contract was to insure her life, and that contract was of force, and a court of equity, under the circumstances, will enforce it. It is, moreover, true that the written application which Willie A. Pugh signed requested the policy to be made out as it was drawn, and the verbal understanding with her grandfather and the agent of the insurance company anterior to this written application, and the policy drawn pursuant thereto, cannot alter or vary it so as to void the liability of the defendant company.

Now, does the failure of the agent, Lowery, to make a personal examination of the applicant, vitiate the policy? I do not think so. This was a rule of the company, but it seems to refer to married women alone, and Miss Pugh was a single woman. Besides, it appears that she was subjected by the medical examiner of the company to the special examination required for females. This was a substantial compliance with the regulations of the defendant company. If it were otherwise, it may well be doubted if the private instructions given to the general agent, Lowery, by the defendant, were binding upon the insured, if they had not been communicated to her. It does not appear that any such communication was made. He notified her through the mails that the policy was effected, and this became, in the absence of fraud on her part, obligatory upon the company as soon as the communication was made. The delivery of the policy under the circumstances was not essential to its validity. It must be construed as completed and delivered when the general agent notified her by mail of its acceptance.

Nor will the defense of the statute of limitations avail the defendant company. Under a misapprehension as to the beneficiary of the policy, suit was brought thereon within the 12-months period by the guardian of the younger sister. This suit was erroneously brought, for the terms of the application and the policy place the title to its proceeds in the legal representative of the deceased. A few days after the expiration of the 12 months this bill was filed by the proper party plaintiff to compel the defendant company to deliver the policy, which it had refused to do, and also sought a decree for the amount due thereon. This being true, I think it would now be unconscionable to allow the company to take advan-

tage of its own mistake. It was, as we have seen, a completed contract, and, although death had intervened before the actual delivery of the policy, it was the plain duty of the company to deliver the policy to the legal representative of Miss Pugh. Instead of doing this, it took the policy out of the state. Thus deprived of the opportunity to correct their mistake by an inspection of the policy, the legal representative of Miss Pugh technically fell under the bar of the statute; but a court of equity, under the circumstances, will not hold him barred. The company is estopped from pleading the statute. This suit was brought within a reasonable time after the discovery of the true terms of the policy. The right of the plaintiff to his day in court was so evident that in the original suit we attempted to protect the plaintiff against a bar of the statute by an order passed at the hearing, and, if this be regarded as a proceeding ancillary to the original suit, the bar of the statute could not be operative. If, however, it be treated as an original bill, the plaintiff will be equally protected under the circumstances. One and the same person was plaintiff both in the original common-law action and in this equity suit. The policy sued on was the same. The only difference was that Phillips, in the outset, because of his mistake as to the terms of the policy then withheld by the defendant, sued as guardian, and now he sues as administrator.

For these reasons a decree will be rendered for the plaintiff for the full value of the policy, with interest. I do not regard this a case where the action of the company was so marked by bad faith that damages and attorney's fees should be assessed against it, pursuant to section 2140 of the Code of Georgia. The demand of the plaintiff in this respect is disallowed.