HARRY S. MOULTON v. THE MASONIC MUTUAL BENE-
FIT SOCIETY.

No. 12,056.   (67 Pac. 533.)

SYLLABUS BY THE COURT.

LIFE INSURANCE— *Company Estopped to Deny Secretary's Au-
thority.* A mutual life-insurance company whose by-laws reserve
to its board of directors the power to accept the applications for
insurance, but authorize its secretary to receive the applications
and the advance premium thereon, and conduct all correspondence
with applicants in the making of insurance contracts, will be bound
by the written, though erroneous statement of that officer to an
applicant that his application had been accepted and that a pol-
icy would be issued, if, before making it, the secretary had received
and was retaining the advance premium, and if the applicant died
before either he or his beneficiary became aware of the real facts.

Error from Shawnee district court; Z. T. HAZEN,
judge. Opinion filed January 11, 1902. Reversed.

*Quinton & Quinton,* and *Lewis & Mahin,* for plaintiff
in error.

*Geo. W. Clark,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action for the specific
performance of an agreement to issue a policy of life
insurance, and for the recovery of the amount of it as
issued. Judgment was refused and therefore plain-
tiff has prosecuted error. ·

Summarized, the facts are that the defendant is an
incorporated mutual life-insurance society or company,
and that one Horace Moulton made application to it
for the issuance of a certificate, or policy of insurance,
in favor of his son, Harry S. Moulton. He passed the
required medical examination. His application and
medical report were filed with the secretary, the

proper officer to receive them, and payment of the advance premium made to that officer, who was likewise the proper one to receive it.    In return, or reply thereto, the secretary wrote the applicant as follows :

"TOPEKA, KAN., June 29, 1897.
"DEAR SIR AND BROTHER—Your application for membership accepted for $2000.    Certificate and receipt will be sent you as soon as possible.    We have a large number of policies on hand to make.
Yours fraternally,
MASONIC MUTUAL BENEFIT SOCIETY OF KANSAS.
WM. M. SHAVER, *Secretary.*"

Receiving, no further information, the applicant wrote as follows :

"KIRWIN, KAN., July 12, 1897.
*Kansas Masonic Insurance Company:*
"DEAR SIR AND BROTHER—Have you sent my certificate of insurance yet?    Please answer, and oblige,
Yours fraternally,    HORACE MOULTON."

In reply to the above, the secretary wrote as follows :

"TOPEKA, KAN., July 15, 1897.
"*Mr. Horace Moulton, Kirwin, Kan.:*
"DEAR SIR AND BROTHER—Certificate of insurance has not yet been made and sent to you.    We are overburdened with work, but trust to reach your case in due time.                    Fraternally yours,
WILLIAM M. SHAVER, *Secretary.*"

Three days after the date of this last communication Horace Moulton died.    The certificate of insurance was never issued, nor the money in payment of it returned or offered back in the lifetime of the applicant.

The by-laws of the society do not confer authority on the secretary to accept applications for insurance. The power to do that is vested in the board of direct-

ors. However, the by-laws make the secretary a general medium of communication between the society and applicants for insurance and other persons having business with it. Section 4 of the by-laws provides, among other things :

"The secretary shall keep a record of all meetings of the society, the officers or directors, and of all transactions and business of the society. He shall keep all the books of account, shall conduct the correspondence, shall collect and receive all moneys due the society and give his receipt for the same, and shall pay over all moneys belonging to the society to the treasurer semimonthly ; shall prepare all the certificates of membership, and all notices of death or assessments, all communications called for and required by the rules of the society, or directed by the board of directors."

By another section of the by-laws, the secretary, together with the president, is required to sign the certificate of insurance. The certificate in question was never issued, nor had the board of directors accepted the application and authorized the certificate to issue. There was no evidence that the applicant for insurance or the beneficiary named by him knew such facts, or knew of any limitation on the secretary's power.

The defendant in error has not filed a brief, and we are unadvised as to the contention it would make, except as it has been stated by the counsel for plaintiff in error. That contention is that, power to accept applications and authorize the issuance of certificates being vested by the by-laws in the board of directors, and that body not having accepted the application in question, the information as to that matter furnished by the secretary to the applicant being erroneous, no contract of insurance was effected. We are constrained to hold to the contrary of this. The

general principle involved has been already decided by this court in *Insurance Co. v. Stone*, 61 Kan. 48, 58 Pac. 986, and *Surety Co. v. Bragg*, 63 Kan. 291, 65 Pac. 272. That principle is that in the making or renewal of a contract of insurance the agent will be held to possess that authority with which the company appeared to clothe him, or, to state it more accurately, the company will be estopped to deny that the agent possessed such authority.

No case precisely like this one has been called to our attention, although a lengthy and able printed argument has been filed on behalf of the plaintiff in error. We think, however, that the following principles of law are well settled and are applicable to the question involved : First, the issuance of a formal policy or certificate is not necessary to the making of an insurance contract. (*Insurance Co. v. Stone*, supra.) Second, one not a member of a mutual insurance company but dealing with its general officers or agents is not charged with constructive knowledge of its by-laws or its internal management. (May, Ins. § 552.) This exemption applies as well to one negotiating for membership in the company — that is, for a contract of insurance to be issued by it — as it does to one negotiating with it in respect to any other matter. If such were not the case, even the issuance of a formal policy of insurance, signed by the proper officers and attested by the corporate seal, would not bind the company, if the precedent authority to the officers had not been given. Suppose in this case the secretary and president had issued the certificate and stamped it with the company's seal, would not the parties in interest, according to the contention of the defendant in error, have been equally bound to know that their action had not been authorized ? Third, as a general

rule, the board of directors of a mutual insurance company, like the governing body of any other corporation, does not and cannot act except through agents. In most particulars the board of directors of a corporation stands apart from the public and conducts its transactions through representatives. This certainly is true of its current, every-day business. Therefore, whomsover it specifically authorizes to be its mouthpiece or organ of communication, or by course of dealing holds out as such, may bind it by the doing or saying of that which comes within the scope of the authority conferred. This is nothing but the ordinary and necessary rule of agency. In this case, as shown by the by-laws hereinbefore quoted, the secretary was such an organ of communication for the board of directors and was, therefore, an agent whose acts were binding, because, as remarked in *Insurance Co. v. Stone*, supra, "the giving of information in respect to the doing of a thing which, when done, the company would entrust to him to do, came within the scope of his authority."

The following decisions were on states of facts somewhat like those of this case: *Durar v. Insurance Co.*, 24 N. J. 171; *McCorkle v. Texas Benevolent Association*, 71 Tex. 149, 8 S. W. 516; *Jones v. National Mutual etc. Association*, 2 S. W. (Ky.) 447. See, also, Mora. Priv. Corp. § 610; 1 Joyce, Ins. § 34.)

The judgment of the court below is reversed and a new trial ordered.

JOHNSTON, SMITH, GREENE, JJ., concurring.