GERTRUDE M. CARTER, APPELLEE, v. BANKERS LIFE INSURANCE COMPANY, APPELLANT.

FILED MARCH 20, 1909. No. 15,467.

1. **Insurance: ACTION: VENUE.** An action against a domestic insurance company may be brought in any county of this state where the cause of action or any part thereof arose, and summons therein may be issued to and served in any other county, although there is but a single defendant to the suit.

2. ———: ———: **PARTIES.** Where a husband enters into a contract of insurance on his life for the benefit of his wife and dies before the policy of insurance issues, the cause of action on the contract of insurance, or for breach of contract for refusal to issue the policy, if such be the case, vests in the wife for whose benefit the contract was made, and not in the administrator of the deceased husband's estate.

3. ———: CONTRACT. Where written application for a twenty-payment life insurance policy is made to a company, one of its provisions being that the application, together with the applicant's statement made to the examining physician and the policy that may be issued, shall be the contract between the applicant and the company, and said application is rejected by the company, which makes a counter proposition to insure the applicant and to issue him a ten-payment policy upon the payment of an additional premium, which proposition is accepted and the additional premium paid, a contract of insurance comes immediately into existence, even though no policy of insurance was then or afterwards issued.

4. ———: REFUSAL TO ISSUE POLICY: ACTION FOR DAMAGES. Where an oral contract of insurance has been made and the premium paid, and the company refuses to issue a policy as required by the terms of the contract, an action for damages for such breach of contract may be maintained by the party in whose favor the insurance was effected.

5. ———: POLICIES: EXECUTION. Section 15, ch. 52, laws 1903, requiring "all policies and contracts of whatever kind for life insurance" to be signed by the president or vice-president and by the secretary or assistant secretary of such company, applies only to companies formed under the provisions of that act.

6. Statute of Frauds: CONTRACT OF INSURANCE. The contract of insurance set out in the plaintiff's petition is not obnoxious to our statute of frauds.

APPEAL from the district court for Valley county: JAMES R. HANNA, JUDGE. *Affirmed.*

*Charles O. Whedon,* for appellant.

*Clements Bros.* and *E. J. Clements, contra.*

DUFFIE, C.

This action was brought for damages for failure of the defendant to issue a policy of insurance on the life of plaintiff's husband. The plaintiff's amended petition alleges that on May 5, 1905, the plaintiff's husband, Harry E. Carter, made a written application to the defendant for a life insurance policy in the sum of $1,000 for her benefit, the policy to be a twenty-payment policy; that at said

time he executed to the defendant's agent his promissory note for $31.10, being the first year's premium, and passed a medical examination which was reduced to writing, and this, together with his application, was submitted to defendant for its consideration; that after due examination and consideration of his application and medical examination, and on May 31, 1905, the defendant informed Carter that it had accepted his application for insurance, and would issue a policy for the benefit of the plaintiff on condition that he would consent to accept a ten instead of a twenty-payment contract, and that the annual premium be increased from $31.10 to $48.10; that Carter thereupon consented to said change, and gave the defendant's agent his check for $17, the additional premium required; that defendant sold the note first given and cashed the check for $17 and applied the proceeds to its own use. It is further alleged that Carter and the plaintiff at the time of making said contract resided in Valley county; that defendant agreed to deliver its policy in said county; and that the contract was made and to be performed therein; that Carter died July 23, 1905, and defendant failed and refused to deliver to Carter or to the plaintiff said insurance policy to the plaintiff's damage in the sum of $1,000.

A special appearance was made by the defendant, who moved to quash the summons, which motion was overruled.

The answer to the amended petition contains two grounds of defense: First, that the court had not legally acquired jurisdiction over the defendant company, for the reason that at no time did it maintain in Valley county an office or place of business, nor have therein servants, employees or agents who were engaged in carrying out the business of life insurance for it in said county; that the summons was directed to the sheriff of Lancaster county, Nebraska, and was there served upon the defendant; that no summons in the case was issued to the sheriff of Valley county, and no summons served upon

defendant by the sheriff of Valley county; that the court did not and could not obtain jurisdiction of the defendant by virtue of a summons issued in Valley county to the sheriff of Lancaster county. The second defense admits that the defendant is a domestic life insurance company, and that S. J. and M. G. Medlin were its agents, and admits, also, that Harry E. Carter was plaintiff's husband and made application to the defendant for a policy of insurance for $1,000, payable on his death to the plaintiff, that he passed a medical examination and submitted the same with his application to the defendant, and further admits that Carter about June 1 offered to accept another form of policy and pay defendant's agent $17 additional premium therefor, and admits that it never issued or delivered to Carter or to the plaintiff any policy, and that Carter died July 23, 1905. It is further alleged that at the time of making his application, and when he paid the $17 additional premium, Carter was not in good health, which fact he concealed from the defendant, that his application was not accepted, but was refused July 13, 1905, and that on August 16, 1905, defendant tendered to plaintiff $48, the amount paid as premium, which the plaintiff refused to accept.

A demurrer to the first defense set out in the answer was sustained by the court, and an exception saved by the defendant. A trial resulted in a verdict and judgment for the plaintiff, and defendant has appealed.

The undisputed facts are that Carter applied for insurance in the sum of $1,000 for the benefit of his wife, and that his written application and written medical examination were submitted to the proper officers of the defendant company at Lincoln, Nebraska; that in the latter part of May or the first of June an agent of the defendant company informed Carter that his application, which was for a twenty-payment policy, would not be accepted by the company, but, if he would consent to take a ten-payment policy and pay an additional annual premium of $17 a year, then a policy for $1,000 would

be issued to him; that Carter accepted this proposition and paid the agent, in addition to his note of $31.10 which he executed for the company when his application was made, his check for $17, the required additional premium for a ten-payment policy; that Carter died July 23, 1905, and the defendant has refused to issue any policy. If defendant's agent had authority to close a contract with Carter for insurance on his life and to agree that a ten-payment policy would be issued, then it is quite apparent that an oral contract of insurance was completed when Carter accepted the proposed change and gave his check for the additional premium. The evidence relating to the authority of the agent is amply sufficient to support the finding of the jury that the agent was authorized to make the contract.

Dr. Mitchell, the medical director of the company, testified that Carter's application was turned over to him about May 9, 1905. Either on the 10th or 19th of May the doctor filled out the blank indorsed on the back of said application approving the same. This indorsement of approval and the date thereof are partially erased, so that it is hard to say whether the date of approval is the 10th or 19th of May, and the doctor himself cannot tell which is the proper date. After such approval the president of the company informed S. J. Medlin, the agent who took Carter's application, that the application had been rejected for a twenty-payment policy, but recommended for a ten-payment policy, and asked him if he could secure the change. Medlin told the president that his brother, M. C. Medlin, also an agent of the company, was going to North Loup, and that he would consult with and have him see Carter. This he did, after which M. G. Medlin saw and talked with the secretary of the company, and the secretary told M. G. Medlin that Carter's application for a twenty-payment policy had been rejected, but had been passed for a ten-payment policy, and the secretary instructed Medlin to take the matter up with Carter and induce him to accept of the proposed change. It was

after this, and about the 31st of May, that Medlin saw Carter, who at first refused, but afterwards consented to take a ten-payment policy, which it was agreed should be delivered to him at North Loup, in Valley county. Medlin further testified that, after securing the change, he informed Mr. Harley, the secretary, of what he had done. Mr. Harley denies these conversations, but the question was one for the jury, who accepted the testimony of Mr. Medlin.

The defendant claims that it rejected Carter's application July 12, 1905, and notified him by letter on July 13. The proof offered to show that Carter was notified of the rejection of his application was a letterpress copy-book containing a copy of a letter to Carter of that date. The only witness who testified as to the date of this letter was Mr. Harley, the secretary. The copy-book contained no letters written by Harley, nor does he claim to have written the letter in question. He had no personal knowledge that any such letter was written. The letter was as follows: "Lincoln, Neb., 7-13-05. Harry E. Carter, North Loup, Neb. Dear Sir: We are sorry to inform you that your application has been declined by the medical department. Very truly yours, Bankers Life Insurance Co. M. L." Who wrote the letter or whom the initials "M. L." stood for Mr. Harley could not tell, and no further evidence regarding it was offered. It is also quite significant that the money received on account of his application was not returned in this letter, and no mention made of it, and the evidence is conclusive that no such letter was ever received by Carter or his wife. There can be no question that the evidence amply supports the finding of the jury that Medlin was authorized to insure Carter, and that he did so.

Recurring now to the legal questions involved: First. Did the district court acquire jurisdiction of the defendant? Section 55 of the code provides that an action against a domestic insurance company may be brought in the county where the cause of action or some part

thereof arose, or in the county where any contract or portion of a contract entered into by such insurance company has been violated or is to be performed. And section 65 provides that, where the action is rightly brought in any county, a summons shall be issued to any other county against any one or more of the defendants. The evidence is uncontradicted that the agent agreed with Carter that he would deliver the policy to him or it would be sent to him by mail at North Loup. It was part of the contract, therefore, that delivery should be made in Valley county, and the failure to deliver is the breach for which this action is brought. We have no doubt that under sections 55 and 65 of the code the action was properly brought in Valley county. The fact that Carter died in Buffalo county, while absent from his home, is not material in determining the proper venue of action. That the summons was properly issued and served upon the defendant in Lancaster county is, we think, established by this court in the following cases: *Grand Lodge, A. O. U. W., v. Bartes*, 64 Neb. 800; *Nebraska Mutual Hail Ins. Co. v. Meyers*, 66 Neb. 657.

Defendant contends that, if any contract of insurance was made with Carter, an action against the defendants for a breach thereof went to his personal representative, and not to the plaintiff. As we understand the case, the plaintiff does not claim the right to recover in this action upon any cause of action which her husband may have had against the defendant company. Her position is that the contract entered into between Carter and the company was made for her express benefit, that she was the real party in interest, and that any breach of such contract gave her a personal cause of action against the defendant, the same as though the contract had been made personally. This to us seems the correct view of the case, and under the code she may maintain an action on a contract made for her benefit.

One paragraph of Carter's application for insurance upon which much stress is placed by the defendant is in

the following words: "It is hereby expressly stipulated and agreed that the above application, together with the statement made to the examining physician and the report of the examining physician, and this declaration and the policy that may be issued to me shall be the contract between me and the Bankers Life Insurance Company of Nebraska, and I hereby warrant the same to be full, complete and true, whether written by my own hand or not; this warranty being a condition precedent to and a consideration for the policy which may be issued hereon." As we understand the contention of the defendant, it is this: The application providing that the policy, among other matters, shall constitute the contract of insurance, then no contract for insurance could be completed until the policy itself was issued. The form of the application was prepared by or upon the approval of the general officers of the company. Conditions which these officers could exact they could also waive. It is quite clear from the evidence, and the jury have so found, that both the president and secretary of the defendant company authorized Medlin to contract with Carter for a ten-payment policy and that such contract was made. There is no doubt that under the terms of Carter's application no agent could bind it by a complete agreement of insurance until the application was approved at the home office; but, when the home office rejected that application and made a counter proposition to Carter, then when the counter proposition was accepted by him, a valid contract of insurance came immediately into existence, regardless of whether the policy was then issued or not. In *Born v. Home Ins. Co.*, 120 Ia. 299, it is said: "The agreement that no liability should attach until there was an approval of the application by the defendant cannot, alone, change the situs of the contract, for that meant simply that the company should not be liable until it had approved the contract made by its local agent; and when it disapproved it in part, and made a counter proposi-

55

tion, which was accepted by the plaintiff, it would be idle to contend that it must reaffirm its own act." In this case the company said to its agent: We cannot accept Carter's application for a twenty-payment policy. We will accept his application and insure him for $1,000 on a ten-payment policy, and we authorize you to see Carter to make him this proposition and to close with him if he accepts it. Making the proposition and its acceptance by the other party, under all authorities, constitutes a valid contract of insurance, unless there be a further stipulation that no contract of insurance shall come into effect until the policy is issued and delivered to the insured.

In *Kimbro v. New York Life Ins. Co.*, 134 Ia. 84, Kimbro made application through a local agent of the company for a policy on his life of $2,000 for the benefit of his wife. This application and the medical examination were sent to the New York office. As the result of some inquiry made, the company declined the policy applied for, but filled out and sent to the local agent at Cedar Rapids, Iowa, a policy differing materially in its terms, and providing that, if the applicant died within 16 years, the liability of the company should be $1,228 only. The agent was directed to deliver this policy, if satisfactory to Kimbro, and he did inform Kimbro that his policy had arrived, and that he would deliver it the next day, but said nothing about the change made. Kimbro died before the policy was delivered. The wife of Kimbro recovered judgment against the company, and the supreme court upon appeal said: "It is true, as already said, that a mere application for insurance cannot be given the effect of a contract; but is a proposal or offer to take insurance, and, if there is any evidence on which the trial court could find as a fact or as conclusion of law that such offer was accepted, then we must treat the applicant as insured upon the terms and conditions of the application. The issuance and manual delivery of a written policy is not ordinarily essential to a contract of insurance." To the same effect is *Preferred Accident Ins. Co.*

*v. Stone,* 61 Kan. 48, and *Moulton v. Masonic Mutual Benefit Society,* 64 Kan. 56.

In *Fried v. Royal Ins. Co.,* 50 N. Y. 243, an agent of the company took an application on the life of plaintiff's husband. The first premium was paid, and it was agreed that the application should be forwarded to the company's head office in London, and, if accepted, a policy would issue, and, if declined, the premium should be returned. In case the husband died before the decision was received, the sum insured was to be paid. The application was accepted by the London office, and a policy returned to be countersigned by the agent and delivered. The agent refused to deliver, upon the ground of an unfavorable change in the health of the husband, who died soon after. In an action by the wife, it was held: "That the contract and acceptance were unqualified and could not be limited or modified by the private instructions to the agent. That the facts being stated in the complaint, it was immaterial whether the action was to be regarded as one upon the policy, or for damages upon the contract to issue a policy. In either view, plaintiff was entitled to recover the amount insured or agreed to be insured."

In the instant case the facts are all stated in the petition. They are supported by the evidence and constitute an agreement to insure. The failure to issue the policy gave the plaintiff an action for damages to the same extent as though a policy had been issued and action brought thereon. In 1 Wood, Insurance (2d ed.), sec. 11, it is said: "The distinction between a contract of insurance and a contract *to* insure is that the one is executed, and the other executory, and in the one case the action is upon the contract for the loss or damage sustained under the risk, while, in the other, the action is for a breach of the contract, for not insuring, and the measure of recovery is the loss sustained, so that the effect is the same in either case."

The contention that the trial court erred in admitting the testimony of agent Medlin, and that by so doing the

terms of a written contract were attempted to be changed and varied by parol testimony, is not well taken. In *Firemen's Ins. Co. v. Kuessner,* 164 Ill. 280, it is said: "Where an application for insurance is presented to a company, stating what is wanted and the terms, and its officer or any agent having authority to issue a policy says one will be issued on that application, the minds of the parties have met in the execution of a contract and a contract for insurance has been consummated. It is an oral contract. Though proposed in writing, the acceptance by parol and a promise to issue a policy thereon constitute an oral contract." And in *Arbuckle v. Smith,* 74 Mich. 568, the court said: "A verbal contract, made on a verbal understanding that it should conform to the terms of a written paper, does not differ from any other verbal contract, and may be shown to have agreed with the writing or differed from it, according to the facts."

So, also, the objection that the contract is obnoxious to our statute of frauds is not tenable, as the contract might, and in this case did, actually terminate within one year.

The claim made by the defendant company that our statute requires all contracts to be evidenced by a written policy must also be denied. Chapter 52, laws 1903, applies only to life insurance companies on the mutual, level premium, legal reserve plan.

Our conclusion is that a contract for insurance was legally made between the parties, that this contract was for the express benefit of the plaintiff herein, and that she may maintain an action for damages for failure to issue the policy. We recommend an affirmance of the judgment.

EPPERSON, GOOD and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.