No. 25,449.

ERRETT WILLIAMS et al., *Appellants*, v̇. INSURANCE COMPANIES REPRESENTED BY ROSEBERRY AND MACALLISTER AGENCIES, *Appellees*.

SYLLABUS BY THE COURT.

1. INSURANCE—*Oral Contract—Offer and Acceptance—Sufficiency.* A party desiring insurance on an aëroplane hangar, aëroplanes, equipment and supplies in it, arranged with an investment company doing an insurance business to obtain insurance on the property. That company being unable to place the entire risk with the companies represented by it, applied to another agency representing other companies to place a part of the risk with its companies, and at the same time giving it the data respecting the property and the amount of insurance desired. The agent in charge of the latter agency informed the applicant that she did not know whether or not she could write the insurance, but would try to do so and do the best she could. She then proceeded to fill out policies in different companies, but did not complete or countersign them, and then placed them in the safe of the agency. At the same time she made out and forwarded to each of the companies a daily report, which gave the names of the company and the insured, the premium, term of insurance, the property covered and its location. When these were received by the insurance companies they declined to carry the insurance and directed the cancellation of the policies. Shortly afterwards the property was destroyed by fire. In an action to recover insurance, it is held that an oral contract for insurance was not made.

2. ESTOPPEL—*Grounds—Direction to Cancel as Admission of Policy.* The fact that the insurance companies directed the cancellation of insurance policies and the return of the same without knowledge as to what had been done towards the issuance of policies cannot be regarded as a binding admission that policies had been issued, nor were they estopped to deny the existence of oral contracts, since it appears that plaintiffs were not misled to their prejudice by the directions and statements of the insurance companies.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed November 7, 1925. Affirmed.

*W. L. Cunningham* and *D. Arthur Walker*, both of Arkansas City, for the appellants.

---

1. Insurance, 33 C. J. § 854; 15 A. L. R. 995; 14 R. C. L. 880. 2. Id., 32 C. J. § 242.

*Robert Stone, George T. McDermott, Robert L. Webb, Beryl J. Johnson,* all of Topeka, *Ellis Fink, Stewart Bloss,* both of Winfield, *John H. Newman* and *C. C. Crow,* both of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This controversy involves the question whether contracts of insurance were made between plaintiffs and defendants. Williams-Hill were partners and were the owners of a number of aëroplanes, aëroplane equipment and supplies located in a hangar near Arkansas City. They desired to obtain insurance on the property and conferred with Mr. Mireau, an officer of the Hill Investment Company, who had interested himself in procuring the hangar for plaintiffs, and his company being engaged in the insurance business, he asked plaintiffs to insure the property through the Hill Investment Company. He told them that an inventory of the property was required, and this was prepared by plaintiffs and given to that company. When the inventory was furnished, Mireau told them that the risk would not be written in a single company, but would be distributed among a number of insurance companies, at the same time telling him that he did not know the rate that would be charged for the insurance, but he would give them a temporary rate, which was not named, and that the insurance would go into effect that day at noon. No payment of premiums was made, but Mireau said when he learned the permanent rate he would present a bill to them for the insurance, when they could pay him. The Hill Investment Company had trouble in placing the insurance with companies which they represented, and they applied to the Roseberry agency and sought to place part of the risk with companies represented by that agency. Mr. Overholt, of the Hill Investment Company, called at the Roseberry agency and negotiated with Mrs. Reddick, the person in charge, with a view of placing some of the risk in companies which that agency represented. The effect of the negotiations, and whether the steps then taken amounted to contracts of insurance with a number of insurance companies, is the principal question in this litigation.

It appears that the hangar and all planes, equipment and supplies, valued at about $32,000, were destroyed by fire in April, 1921, shortly after the applications for insurance were made. The plaintiffs brought actions against the insurance companies, both those represented by the Hill Investment Company and also those in the

Roseberry agency, but only those represented by the Roseberry agency are involved in this litigation.

At the trial there was a consolidation of the cases against the companies in the Roseberry agency. Testimony in behalf of plaintiffs was submitted on the cases so consolidated, and at the end a demurrer to plaintiffs' evidence was sustained, and this ruling is assigned as error. Whether contracts of insurance binding on the several defendants were made depends largely on the testimony of Mrs. Reddick, who was in charge of the Roseberry agency. In substance she testified that Overholt visited the agency and stated that he wished to obtain insurance for the Williams-Hill Aëroplane Company. She asked him for the "dope," which he gave to her, stating the property to be insured, rates and amounts to be placed in the different policies. After the interview Mrs. Reddick took blanks and prepared policies in the several companies, but did not complete or sign them, and she made out and sent what she called daily reports to the companies. In explaining the negotiations with Overholt she said she told him she would try to get him the insurance, but did not know whether or not she could get it. She stated that she did not complete or fill out the policies in the usual way; that is, she did not put in a description of the property nor sign them. Three copies of the daily reports were made up and signed by her, one of which was sent to each of the insurance companies and the other placed in the safe with the unsigned policies. She had no dealings or conversation with the plaintiffs respecting the insurance and nothing was paid on the premiums, and defendants, upon receiving the reports mentioned, declined to accept the applications and by telegrams and letters directed the cancellation of the unsigned policies.

Plaintiffs contend that the negotiations between Overholt and Mrs. Reddick and the circumstances pertaining to it effected an oral contract of insurance, and the fact that the policies were not countersigned did not invalidate that contract. It is argued that the policies are only evidence of the contract and that a valid one by parol may be shown not only by the words used in the negotiations, but also by the attending facts and circumstances, from all of which a contract may be inferred. It is argued that the daily reports which were signed by Mrs. Reddick and forwarded to the insurance companies warrants the inference that contracts were made. These reports stated the name of the company, the name of the insured, the

amount of the premium, the time when the risk attached, the term of the insurance, the property covered and its location. The reports so made and sent to defendants were received by them, and it is said that this carries the implication that the property had been insured.

Another circumstance relied on was the action of the companies in directing the cancellation of the policies, which it is contended was a recognition of the existence of contracts.

Passing for the present the matter of recognition of the contract by the defendants, or the effect of the orders of cancellation, consideration will be given to the question whether contracts were in fact made by the conversation and dealings between Overholt and Mrs. Reddick. She doubtless had authority to conclude contracts in behalf of the companies which were in the Roseberry agency. Overholt, who was acting for the Hill Investment Company, applied for the insurance, and the question is, Did she close a contract by accepting the application and an àgreement to insure the property? Assuming, as we may, that an effective oral contract could have been made without the issuance of a completed policy (*Insurance Co. v. Stone*, 61 Kan. 48, 58 Pac. 986), were contracts made in this instance? Plaintiffs introduced Mrs. Reddick for the purpose of showing the agreement. Her testimony, already recited, was to the effect that she did not agree with Overholt to insure the property, but only that she would try to obtain insurance. The trial was made by sending the daily reports to the several companies for their acceptance or rejection, but they rejected the applications. The fact that she did not complete or countersign the policies or enter them on the policy register in the usual way harmonizes with her testimony that she told Overholt that she did not know whether or not she could get the insurance, but that she would try and do the best she could towards getting it. She also said that she handled the applications differently from ordinary cases where she was sure insurance could be obtained, and that she sent the daily reports to the companies to find out whether they would write policies. When her trial with one group of companies was unsuccessful she tried still others, with the same result. From her statements to Overholt he had no reason to infer that he had obtained insurance on the property, nor anything more than that Mrs. Reddick would use her best endeavors to procure the consent of the defendants to insure. There can be no

contract without the assent of both parties, and Mrs. Reddick as we have seen did not assent to a contract of insurance, but only that she would try to get the defendants to insure and both understood that the obtaining of defendants' assent was problematical. What she said and did could not have misled Overholt or induced him to believe that a completed contract had been made. The agreement between plaintiffs and the Hill Investment Company, however it may affect the insurance companies represented by that company, had no binding force as against the companies in the Roseberry agency. The Hill Investment Company was not the agent of the defendants nor did the negotiations between Overholt and the Roseberry agency make them agents of the latter. We conclude that plaintiffs' evidence establishes clearly enough contracts of insurance were not made. A case quite closely in point is *John R. Davis Lumber Co. v. Insurance Company,* 94 Wis. 472, where an action was brought on an alleged verbal contract for insurance. There an application for insurance was made to an agent of insurance companies on a particular form of policy. The agent did not agree to place the insurance but arranged with the applicant to see what he could do and would later notify him. In trying to get the insurance, the agent proceeded to distribute the amount applied for among three insurance companies and there as here included these in the daily reports sent to the companies. These reports it was shown were made in the usual way and such reports ordinarily indicate that policies have been written up. The court held that while verbal contracts for insurance may be made, the evidence failed to show that a contract had been concluded and that the trial court should have directed a verdict in favor of the insurance companies. The syllabus of the case states:

"A binding contract of insurance may be made without the payment of any premium, or even the making of any report to the insurer, but in order to establish such a contract the evidence must show that the minds of the parties have met so as to leave nothing to be done thereafter except to execute it as made. There must be an application; the terms and property must be specified; and, if the application is made to an agent representing several companies, the particular company or companies to carry the risk and the amount each is to carry must be designated, and each by its agent or otherwise must agree to take the risk.

"Where it was contemplated that the agent to whom the application was made should seasonably investigate and report whether the companies would carry the risk, and the applicant until notified of their decision could have withdrawn the application without becoming liable for the premium if the

risk was accepted, the minds of the parties had not met." (See, also, *Diver v. London and L. Fire Ins. Co.,* 9 N. Y. St. Rep. 482; *More et al. v. N. Y. B. F. Ins. Co.,* 130 N. Y. 537.)

Are the defendants estopped to assert that no contract of insurance was made? The contention of plaintiffs is that in directing a cancellation of policies and asking for a return of the same, they admitted the issuance of policies and the existence of contracts and should not be allowed to change their ground and assert the contrary. They further insist that the acts of the defendants in this respect amounted to an admission that a contract had been made. The defendants can hardly be regarded as admitting that the Roseberry agency had made a contract when in fact none had been made, nor can they have been estopped where they acted without knowledge of the facts relating to the issuance of policies at the agency. The general rule is that estoppel does not arise where a party acts in ignorance of the real facts. Aside from a lack of knowledge by defendants of the facts, the statements as to cancellation were not made to mislead the plaintiffs, and manifestly they were not misled by the statements, because the communications of defendants relating to the cancellation did not come to plaintiffs' attention until after the fire had occurred; and it is clear that the plaintiffs did not act upon these communications to their prejudice, since they admit that they did not even know of the Roseberry agency or its attempt to obtain policies until after the loss had occurred. Plainly there is a lack of the essential elements of an estoppel. (*Ergenbright v. Henderson,* 72 Kan. 29, 82 Pac. 524; *Schott v. Linscott,* 80 Kan. 536, 103 Pac. 997.) The Roseberry agency did inform the Hill Investment Company at once that the insurance had been refused, but the plaintiffs had no communications with defendants, had advanced no money as premium, and, as already stated, had no knowledge of the existence of the agency or the transaction between Overholt and the agency until the property had been destroyed. We conclude that there was no estoppel and no error in holding that plaintiffs' evidence did not support the recovery asked.

The judgment is affirmed.