PEOPLES LIFE INS. CO. v. WHITESIDE et al.

BLASSINGAME v. PEOPLES LIFE INS. CO. et al.

No. 8229.

Circuit Court of Appeals, Fifth Circuit.

Jan. 27, 1938.

Rehearing Denied Feb. 25, 1938.

Ralph W. Malone, of Dallas, Tex., for appellant Peoples Life Ins. Co.

James Lawson Goggans, of Dallas, Tex., for Faye Blassingame.

Hugh B. Smith, of Fort Worth, Tex., and C. A. Williams, of Childress, Tex., for appellees.

Before FOSTER and HUTCHESON, Circuit Judges, and STRUM, District Judge.

STRUM, District Judge.

On January 21, 1935, Albert K. Whiteside applied to the appellant insurance company for a $10,000 policy of life insurance, with double indemnity for accidental death. The named beneficiary was "Faye Blassingame—creditor— * * * if living; otherwise to the Insured's executors, administrators or assigns." The application was submitted by Whiteside through J. B. Stephenson, the appellant's general agent at Dallas, Tex., who forwarded the application to the company, together with the agent's check for $8.68 representing the net sum the general agent thought to be due the company as its part of the first premium, and which was in fact the usual sum. For the sum of $8.68 so remitted, as well as for the remainder of the first premium which the agent retained as his commission under his contract with the company, the agent extended credit to Whiteside as had been previously done when other policies were issued to him. The agent's customary practice of extending credit in this manner was acquiesced in by the company.

The company was unwilling to issue a policy carrying double indemnity as applied for, but on February 6, 1935, issued an ordinary life policy which was the identical policy applied for, except that double indemnity was omitted, and forwarded the same to its agent Stephenson at Dallas on February 15, 1935. Stephenson mailed the policy to Whiteside at Childress, Tex., where it was placed in Whiteside's post office box on or about February 19, 1935. It remained there, the envelope containing it unopened, until after Whiteside's death from pneumonia on February 25, 1935. Whiteside was absent from Childress, Tex., from the time the policy was mailed until his death.

The company having denied liability, this action was instituted on the policy by Faye Blassingame, the named beneficiary. Pearl O. Whiteside, deceased's wife, intervened and claimed the proceeds of the policy as administratrix of Whiteside's estate, asserting that Whiteside's indebtedness, if any, to Faye Blassingame had been paid in full since his death, so that his estate became entitled to the avails of the policy; Miss Blassingame's claims to the proceeds having been extinguished by payment of Whiteside's indebtedness to her.

The District Court held the company liable, and awarded the proceeds of the policy to the administratrix. The company and the named beneficiary appeal.

The company asserts that it rejected Whiteside's application for a policy carrying double indemnity and, as a counter offer, tendered him an ordinary life policy which was never accepted by him, so that there was no meeting of minds and consequently no contract.

The company relies upon Mutual Life Ins. Co. v. Young, 90 U.S. 85, 23 Wall. 85, 23 L.Ed. 152; American Ins. Union v. Lowry, 5 Cir., 62 F.2d 209; Travis v. Nederland Life Ins. Co., 8 Cir., 104 F. 486; Miller v. Northwestern Ins. Co., 4 Cir., 111 F. 465; McNicol v. New York Life Ins. Co., 8 Cir., 149 F. 141; Rushing v. Manhattan Life Ins. Co., 8 Cir., 224 F. 74; Mohrstadt v. Mutual Life Ins. Co., 8 Cir., 115 F. 81; New York Life Ins. Co. v. Levy's Adm'r, 122 Ky. 457, 92 S.W. 325, 5 L.R.A.,N.S., 739; and like cases.

The company also relies upon the provision in the application that "there shall be no liability hereunder until a policy shall be issued, and delivered to me, while in good health, and the first premium thereon actually paid during my life time. * * *"

The cases relied upon by appellant are inapposite here. In all of them there was either no delivery of the modified policy to the applicant—the policy at all times remaining in the hands or under the control of the company or its agents—or there was an unauthorized, mistaken, or wrongful delivery, or a delivery for inspection only. In none of them was there a final, uncondi-

tional delivery. In most of them there was no payment of the first premium, nor any action tantamount thereto. The letters from, or statements by, the agents to the applicants involved in some of those cases were merely promises of a delivery in futuro, which were never consummated.

Here the policy sued on was delivered to the applicant as effectually and finally as the company could do so. It was entirely and completely out of the company's possession and control, animo liberare, and under the rightful dominion and control of the applicant six days before his death, although it apparently did not come into his actual manual possession. The delivery was with full knowledge of all the facts. It was final, absolute, deliberate, and unconditional. It remained so until Whiteside's death; no effort being made either to withdraw the policy nor to insist upon a formal acceptance of it.

Moreover, on February 5, 1935 Stephenson, the agent, wrote the company asking whether the report of Whiteside's medical examination had been received. On February 8, 1935, the company wrote the agent in reply—"This examination has been received and the policy is being issued. You will receive the same within the next few days." Thereupon on February 11th, the agent wrote Whiteside at Childress, Texas—"We are advised that your application for $10,000 policy has been approved and that policy is being issued for delivery. James (Stephenson's son) will deliver the same to you in person or by mail as soon as the home office forwards it to this office." Thereafter, on February 18th, the policy, having been received by the agent from the company, was mailed by Stephenson to Whiteside's post office box at Childress, Tex.

Thus it will be seen that two weeks before his death and while he was apparently in good health, Whiteside was advised by the company's general agent, pursuant to advice from the company's home office, that the policy had been issued and would be delivered in due course, which was done six days before Whiteside's death. Neither the letter from the company to its agent, nor from the latter to Whiteside, made any mention of the omission of the double indemnity feature. Whiteside was entitled to rely upon the letter written him by the company's general agent.

■ The letter from the company to the agent was signed: "Peoples Life Insurance Co., M. T. McCarty, Med. Director, E. C." "E. C." was shown to be the initials of a stenographer in the office of Dr. McCarty, medical director of the company, at its home office. The company contends that the stenographer was without authority to thus bind the company or to waive its rights. There is testimony from which it may be reasonably inferred that this communication was thus signed with the authority of the medical director. But however that may be, the fact remains that the policy (less double indemnity) was issued and forwarded as stated in the letter, a ratification which cures pro tanto any original lack of authority in the stenographer. Cf. New York Life Ins. Co. v. Silverstein, 8 Cir., 53 F.2d 986. No claim is made for double indemnity.

The company received and retained its net portion of the first premium. True, it disputed the amount with its agent, not because of an error in computation, but because the company declined to allow the agent the usual commission on this policy. The balance demanded by the company was charged by it against other commissions it owed the agent, so that in the end the company received and retained the full net premium contended for by it.

■ By knowingly acquiescing in the agent's practice in this and other cases of remitting only the net premium to the company and extending credit for the remainder which represented the agent's commission and was his to deal with as he chose, and by knowingly receiving and retaining the net premium due it on the policy sued on, the company waived the above-quoted provision of the application that there should be no liability on the policy applied for until the first premium on the policy is "actually paid." Such an arrangement, knowingly acquiesced in by the company, is tantamount to payment. New York Life Ins. Co. v. Ollich, 6 Cir., 42 F.2d 399; Smith v. Provident Sav. Life Assur. Society, 6 Cir., 65 F. 765; Payne v. Mutual Life Ins. Co., 8 Cir., 141 F. 339.

■ Having done all that was required of him, and having been unconditionally advised by the company's general agent pursuant to advice from the home office that his application had been "approved and that policy is being issued for delivery," Whiteside was justified in assuming that he was covered; never having been advised to the contrary. International Trust Co. v. Norwich Union Fire Ins. Soc., 8 Cir., 71 F. 81;

Preferred Acc. Ins. Co. v. Stone, 61 Kan. 48, 58 P. 986. Being advised of no conditions attached to such approval, there was no occasion for Whiteside to take any overt action indicating formal acceptance. Even if the policy as issued and delivered by the company constituted only a counter offer by the company which it could withdraw prior to acceptance, it made no effort to do so prior to Whiteside's death.

■ Having thus prejudicially misled Whiteside into believing that his application had been accepted and the policy issued as applied for, thus inducing him to forego securing other insurance had he desired to do so; having unconditionally delivered the policy to Whiteside without any effort to recall the same during his lifetime; and having received and retained the net first premium with knowledge of all the facts, the company is estopped to assert, after Whiteside's death, that there was no meeting of the minds in a formal sense. Union Central Life Ins. Co. v. Phillips, 5 Cir., 102 F. 19; Cf. Phillips v. Union Cent. Life Ins. Co., 5 Cir., 101 F. 33; Great Southern Life Ins. Co. v. Dolan, Tex.Civ.App., 239 S.W. 236; United Fidelity Life Ins. Co. v. Handley, 126 Tex. 147, 86 S.W.2d 201; New York Life Ins. Co. v. McIntosh (Miss.) 41 So. 381; Beswick v. National Casualty Co., 206 Mo.App. 67, 226 S.W. 1031; Moulton v. Masonic Mutual Ben. Soc., 64 Kan. 56, 67 P. 533; Preferred Acc. Ins. Co. v. Stone, 61 Kan. 48, 58 P. 986; 32 C.J. 1106.

After Whiteside's death, Faye Blassingame asserted a claim against his estate for moneys loaned during his lifetime. The claim was disputed but was settled by the payment to her of an agreed sum of money, which was accepted in full satisfaction.

■ The policy sued on is a Texas contract, and the insured was there resident. The law of that state governs its interpretation, especially where, as here, a question of that state's public policy is involved. Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398; Jones v. Sovereign Camp, W. O. W., 5 Cir., 35 F.2d 345.

■■ In Texas it is held to be contrary to public policy to permit one who has no insurable interest to be the owner of an insurance policy on the life of a human being.

In that state, when a policy of insurance is taken out by a debtor on his own life, naming a creditor as a beneficiary, on payment of the debt such beneficiary loses all interest in the proceeds of the policy which then becomes one for the benefit of the insured, collectible by his executors or administrators; the former creditor becoming a trustee as to the remainder of the proceeds. The creditor's claim upon the proceeds extends no further than the debt. Wilke v. Finn, Tex.Com.App., 39 S.W.2d 836; Cheeves v. Anders, 87 Tex. 287, 28 S.W. 274, 47 Am.St.Rep. 107; Goldbaum v. Blum, 79 Tex. 638, 15 S.W. 564. Cf. Crotty v. Union Mutual Life Ins. Co., 144 U.S. 621, 12 S.Ct. 749, 36 L.Ed. 566; Cammack v. Lewis, 82 U.S. 643, 15 Wall. 643, 21 L.Ed. 244.

■ Faye Blassingame was not related to Whiteside, nor was she legally or morally dependent upon him for support. Their only relationship, other than that of debtor and creditor, was a meretricious one. When Whiteside's alleged indebtedness to her was paid, she had no further reasonable and legal expectation of pecuniary benefit or advantage from the continuance of Whiteside's life, and consequently no further insurable interest therein. Connecticut Mut. Life Ins. Co. v. Schaefer, 94 U.S. 457, 24 L.Ed. 251.

Under the rule in Texas, the proceeds of the policy were correctly awarded to the administratrix, even though the policy was procured by the insured himself, and not by the creditor—beneficiary. Wilke v. Finn, supra, Cheeves v. Anders, supra. We are not concerned with what the situation would be if Miss Blassingame claimed under a policy validly assigned to her subsequent to its issuance, nor with what the rule would be in another jurisdiction. Cf. Grigsby v. Russell, 222 U.S. 149, 32 S.Ct. 58, 56 L.Ed. 133, 36 L.R.A.,N.S., 642, Ann.Cas.1913B, 863; Warnock v. Davis, 104 U.S. 775, 26 L.Ed. 924; Finnie v. Walker, 2 Cir., 257 F. 698, 5 A.L.R. 831; Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 6 S.Ct. 877, 29 L. Ed. 997; Midland Nat. Bank v. Dakota Life Ins. Co., 277 U.S. 346, 48 S.Ct. 532, 72 L. Ed. 911.

Other assignments have been examined, but no reversible error found.

Affirmed.