## TABAS et al. v. EMERGENCY FLEET CORPORATION.

(District Court, E. D. Pennsylvania. January 7, 1926.)

No. 10020.

1. **Signatures** ⊜2—Typewritten, printed, or rubber-stamped signature, if adopted or authorized, is binding.

Typewritten, printed, or rubber-stamped signature, if adopted or authorized, is binding.

2. **United States** ⊜65—Sovereign held not deemed to have executed contract because its name is placed on paper in typewriting.

United States is not deemed to have executed contract because its name is placed on paper in typewriting, in absence of evidence that it authorized or adopted such signature.

3. **United States** ⊜60—Shipping Board is not authorized to bind United States.

United States Shipping Board is not authorized by statute to bind United States.

4. **Corporations** ⊜452—Name typed on sales contract held not executed in manner in which corporations execute contracts.

Sales contract, on which name of United States Shipping Board was typed, *held* not executed in manner in which corporations execute contracts.

5. **Contracts** ⊜28(1)—Presumed that one executing contract intends to be bound by it.

It is presumed that one executing a contract intends to be bound by it.

6. **United States** ⊜52½ New, vol. 19A Key-No. Series—Burden held on Fleet Corporation to prove that contract created joint liability against it and United States.

Burden was on Emergency Fleet Corporation to prove that its contract to sell underground cable created joint liability against it

and United States, preventing suit against it alone.

**7. Sales ⚖️417—Evidence held sufficient to establish market value of secondhand cable.**

In action for seller's breach of contract to sell underground cable, evidence *held* sufficient to establish market value thereof.

**8. Sales ⚖️416(2)—That loss of profits was identical with difference between market value and contract price held no reason for excluding evidence of market value.**

That loss of profits for seller's breach was identical with difference between market value and contract price *held* no reason for excluding evidence of market value.

**9. Trial ⚖️140(1)—Credibility of witnesses is for jury, and not for court.**

Credibility of witnesses is for jury, and not for court.

At Law. Action by one Tabas and others against the Emergency Fleet Corporation. On defendant's motion for a new trial. Motion denied, and judgment entered for plaintiffs on the verdict.

Porter, Foulkrod & McCullagh and Donald Spencer Edmonds, all of Philadelphia, Pa., for plaintiffs.

Paul W. Knox, of Philadelphia, Pa., and George Biddle, of New York City, for defendant.

Before THOMPSON and DICKINSON, District Judges, sitting in banc.

THOMPSON, District Judge. In this case, the Northern Metals Company, a copartnership consisting of three men named Tabas, sued the Emergency Fleet Corporation for damages for the breach of a contract of sale to the plaintiffs of all the underground cable at Hog Island between certain points, approximately 125 tons. As the cable was underground, and the contract called for all of the cable within certain limits, the jury was instructed, under the authority of Brawley v. United States, 96 U. S. 168, 24 L. Ed. 622, and the recent case of Lipshitz & Cohen v. United States, 46 S. Ct. 45, 70 L. Ed. ——, decided by the Supreme Court November 16, 1925, that what was sold under the contract was all of the underground cable within those limits. One of the grounds upon which the present motion is based is that, upon the face of the contract, the United States and the Emergency Fleet Corporation were joint obligors, and that the suit could not be maintained against the Fleet Corporation alone; the United States not having been joined in the suit.

The letter, containing the offer to sell the cable to the Northern Metals Company and accepted by it, is on stationery bearing the letter head of the United States Shipping Board Emergency Fleet Corporation. Above the signature of the Emergency Fleet Corporation, by its sales manager, it bears at its foot the words in typewriting: "United States of America, by United States Shipping Board." The argument of the attorney for the defendant is that, on its face, the paper is a contract of the United States, executed for it by the United States Shipping Board, and that the burden was upon the plaintiff of proving at the trial that the contract is that of the Emergency Fleet Corporation alone, and that the United States is not a joint obligor.

[1, 2] No doubt an individual or corporation may adopt or authorize the execution of documents by a typewritten, printed, or rubber-stamped signature, and, if its adoption or the authority is shown, it is bound by its signature; but there was no evidence of adoption, nor of authority in any one to bind the United States. A corporation sovereign is not deemed to have executed a contract because its name is put down upon the paper in typewriting.

[3, 4] It is contended that the letter purports to be signed for the United States by the United States Shipping Board; but there is no authority found in the statute books upon which the United States may be bound by the action of the Shipping Board. There was no evidence, nor does anything appear upon the paper, to show that the Shipping Board executed the contract. Its name, placed upon the paper in typewriting, does not constitute execution in the manner in which corporations execute contracts.

[5] The execution on behalf of the Emergency Fleet Corporation by J. T. Eason, as sales manager, was not denied, Eason's signature appearing on the paper. It is presumed that one who executes a contract intends to be bound by it. Gill v. General Electric Co., 129 F. 349, 64 C. C. A. 99. And therefore, in this case, if the contract had been executed for the United States under lawful authority, the suit could not be maintained against the Emergency Fleet Corporation alone. But the contract in suit was not on its face, nor is it shown in fact to have been, on behalf of the United States.

[6] The only defense to the separate liability of the Emergency Fleet Corporation was that, as a matter of law, the contract must be held to be joint. That point was, in our opinion, properly ruled against the

defendant, the burden being upon it, and not upon the plaintiffs to establish its contention of joint liability.

[7] The second contention of the defendant is that there was no sufficient proof of market value to establish any rule under which the plaintiffs' damages could be determined. There was evidence tending to show that there was no open market for secondhand cable as such, but that there was a market for the material composing the cable. One of plaintiffs testified that he had obtained three bids for the material composing the cable after it was cut up and taken apart, the lead and copper both being salable, but the other materials being waste, and there was other testimony that the price offered upon those bids was the market value.

[8] There was evidence on the part of the defendant tending to show a lower market value than that testified to by the plaintiffs' witnesses. It was contended at the trial, and it is contended now, for the defendant, that what the testimony showed was a loss of profits. While the loss of profits, as shown by the price received for the cable material sold, was identical with the difference between the contract price and the market value, as shown by the price bids of the three parties to whom the plaintiffs offered the material as scrap copper and lead, the mere fact that the results are identical afforded no reason for ruling out that testimony.

[9] The defendant contends that there should be a new trial, because there was no credible evidence upon which the verdict could be based. The credibility of witnesses is a question for the jury, and not for the court. The contention, therefore, is without merit.

The motion for a new trial is refused, and judgment may be entered for the plaintiffs upon the verdict, with costs.