### SMITH v. BLACHE et al. *
### No. 13934.

Court of Appeal of Louisiana. Orleans.
March 7, 1932.

Benjamin Y. Wolf, of New Orleans, for appellant.

Sanders, Baldwin, Viosca & Haspel, of New Orleans, for appellees J. Henry Blache and Union Indemnity Co.

WESTERFIELD, J.

This is an appeal from a judgment maintaining an exception of no cause of action.

The plaintiff, Dr. Alvin J. Smith, alleges that on the 17th day of October, 1930, he agreed to purchase, and Branel J. Braud agreed to sell, certain real estate in the city of New Orleans; that he deposited with J. Henry Blache, a real estate agent, $375, "on account of the purchase pricce of said property for the account of B. J. Braud"; that it developed that the property which Braud had agreed to sell did not belong to him, but to his wife, Emma Cyrus, who refused to sign the agreement of sale and refused to execute the act of sale when plaintiff and Braud appeared before the notary public for that purpose; that Blache was a qualified real estate agent in accordance with Act No. 236 of 1920, having furnished bond in the sum of $10,000 with the Union Indemnity Company as surety; that amicable demand has been made upon Blache, as required by Act No. 225 of 1918, without avail. He prays that Blache, Braud, and Union Indemnity Company be cited, and that there be judgment against them, in solido, in the sum of $375, with interest and attorney's fees.

Each defendent filed an exception of no cause of action, which was maintained as to Blache and the Union Indemnity Company and overruled as to Braud. Plaintiff has appealed.

The argument in this court in favor of the exception is to the effect that Blache was the agent of Braud, the owner of the real estate which was the subject of the agreement of sale, and that an agent of a disclosed principal cannot be held to personal responsibility. The agreement of sale is in printed form, and reads as follows:

"I hereby offer $3,750.00 for the property (description and terms follow).

"If this offer is accepted I will immediately deposit with J. Hy. Blache, to bind the sale and as part of the purchase price, $375.00 in cash, said deposit to be non-interest bearing and is to be placed in any Bank of your selection, without responsibility on your part in case of failure or suspension of such bank pending settlement with me.

"In case I fail to comply with the above offer, if accepted, I agree to pay to J. Hy. Blache a commission of 5 per cent. and all fees and costs incurred in enforcing collection. In case I do comply with this offer, vendor is to pay the commission of 5 per cent.

"The parties hereto waive the benefits conferred by Art. 2463, Revised Civil Code, and agree that neither shall have the right to recede from this contract by forfeiture of the deposit by the one, or return of double

---

*Rehearing denied April 4, 1932.

by the other, either party hereto reserving the right to demand specific performance.

"It is agreed by both parties to this contract that the commission is due and earned by J. Hy. Blache on the signing of this agreement, and shall not be affected by any subsequent agreement of the parties hereto or by the annulment of this contract by any court.

"[Signed]   Dr. Alvin J. Smith.

"The owner hereby accepts the above offer and agrees to conform to the terms and conditions therein.  I further agree to pay J. Hy. Blache 5 per cent. commission on the purchase price, which commission I authorize him to deduct from the deposit, and agree to pay all fees and costs incurred, if necessary, to enforce collection.

"[Signed]   J. Hy. Blache, Agt. for
B. J. Braud, Owner, Authorized."

Articles 3016 and 3017 of the Revised Civil Code are pertinent:

"3016. The broker or intermediary is he who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatary of both.

"3017. The obligations of a broker are similar to those of an ordinary mandatary, with this difference, that his engagement is double, and requires that he should observe the same fidelity towards all parties, and not favor one more than another."

It is contended, however, that, since the agreement of sale stipulates a waiver of article 2463, R. C. C., relative to earnest money, the articles of the Code cited have no application, because the deposit made with the agent was on account of the purchase price, and therefore Blache only represented the owner, Braud, and not the proposed purchaser, Smith, because it was contemplated that the money was to be immediately turned over to Braud, without regard to whether the transaction was consummated by an act of sale, or otherwise.

Our answer to this argument is that, in the first place, it is exceedingly doubtful whether there was any intention that the money should be immediately paid to Braud, because it is stipulated that it should be put in a bank and that the agent should not be liable for the interest, or for the failure of the bank during the time it was on deposit. In our opinion, a fair reading of the contract would indicate that it was intended that the $375 was to be paid over by the agent to the owner of the property when the act of sale was consummated, because otherwise there would be no sale, no purchase, and no purchase price to which it might be applied. But, if we are mistaken in this, and the contract is susceptible of the interpretation put upon it by defendant's counsel, and it was contemplated that the money given to Blache should be given to Braud at once, certainly

he was, to that extent, the agent of Smith, who had given him the money for that purpose. Blache owed to Smith the same fidelity in the execution of his mandate as he owed to Braud, the other party to the transaction. It may be that, upon the trial of the case upon the merits, it will be satisfactorily established that he had executed this mandate and can be held to no further responsibility.

In the case of Titus v. Cunningham et al., 164 La. 431, 114 So. 86, where a similar situation was presented, the court said: "It is argued on behalf of Titus that Murphy and Salomon were brokers, or mandatories of both Titus and Mrs. Cunningham, owing as much fidelity to the one as to the other, and that they were obliged to hold the deposit of $750 subject to the mutual order of Titus and Mrs. Cunningham, or an order of court. The argument would be good if that had been the understanding of the parties; but the fact is that Titus deposited the $750 with Salomon with the understanding and intention that it should be paid over to Mrs. Cunningham or to Murphy as her agent and by him to her. For that reason neither Murphy nor Salomon is answerable to Titus for paying the money to Mrs. Cunningham."

And so we say here that the question is whether Blache executed his dual mandate in accordance with the intention of the parties, a fact which can only be determined upon the trial of the case.

Nor would it make any difference if the sum deposited with Blache had been earnest money instead of a partial payment. A payment by Blache to Braud under such an arrangement would completely exonerate him, because such would have been the intention of the parties.

"But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to-wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double." Revised Civil Code, art. 2463.

The determining factor here, as in the Titus Case, is the proper execution of the commission, or mandate. The principle relied upon by the defendant in this case to the effect that agents are not liable to third persons for their nonfeasance is a very familiar one to both the common and the civil law. It has been well expressed by Chief Justice Bermudez in Delaney v. Rochereau & Co., 34 La. Ann. 1123, 44 Am. Rep. 456, in the following language:

"At common law, an agent is personally responsible to third parties for doing something which he ought not to have done, but not for not doing something which he ought to have done, the agent, in the latter case,

being liable to his principal only. For nonfeasance, or mere neglect in the performance of duty, the responsibility therefor must arise from some express or implied obligation between particular parties standing in privity of law or contract with each other. No man is bound to answer for such violation of duty or obligation except to those to whom he has become directly bound or amenable for his conduct. * * *

"It is an error to suppose that the principle of the civil law, on the liability of agents to third persons, is different from those of the common law."

This court, in S. Pfeiffer & Co. v. R. F. Mayer & Co., 3 La. App. 289, pointed out the distinction between the rule with respect to agents generally and those which appertain to the broker, or intermediary, under articles 3016 and 3017 of the Code. In Louisiana, the broker represents both parties, and is therefore not a third person with respect to either party to the transaction which he negotiates as intermediary. The parallel sought to be drawn by counsel in the argument at the bar between a broker and a salesman in a department store is wholly lacking in analogy. The salesman in the department store represents his principal, the proprietor, as an agent, and for any act of omission is responsible to his principal alone. He is not the agent of the customer who purchases merchandise, and, in effecting a sale, is the mandatary of the proprietor of the store alone by whom he is employed. If, in the management of his principal's affairs, he is guilty of a fault, or a mistake, he is liable to the "mandant" alone. Unlike the broker, he does not represent the buyer and the seller. Let us suppose that Blache still has the $375 deposited with him by Smith. Can it be said that, the sale which he attempted to negotiate having failed of consummation, he would be entitled to retain the amount placed in his hands to be applied upon the purchase price? And, going a step further, we will assume that Smith had paid over to Blache one-half, or, say, the entire purchase price of $3,750, and that Blache had retained this amount. Is it possible that Smith would have no right to judicially inquire what became of his money? The confusion of counsel, it seems to us, is due to his failure to give to the codal articles the effect plainly intended, for, once it is realized that Blache is Smith's agent, as well as Braud's agent, all objection to the plaintiff's suit must disappear.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in plaintiff's favor overruling the exception of no cause of action and remanding this case for further trial according to law, and consistent with the views herein expressed.

Reversed and remanded.

HIGGINS, J., absent, takes no part.