[Civ. No. 9508. Second Appellate District, Division One.—April 22, 1936.]

ROSE SHANNON FEINBERG, Respondent, v. AETNA LIFE INSURANCE COMPANY (a Corporation), Appellant.

Gibson, Dunn & Crutcher, Philip C. Sterry and Ira C. Powers for Appellant.

Eugene H. Marcus, Harry Rabwin and Harold W. Nash for Respondent.

YORK, J.—The complaint in this case alleges that on June 18, 1931, the defendant, in consideration of the premiums therein agreed to be paid by the insured, issued its policy of life insurance to one Samuel Feinberg. The death of Feinberg is then alleged; that the plaintiff became entitled to the sum of $10,000; that demand for payment of said sum had been made and "that each and every condition stated in said policy has heretofore been performed in accordance with the terms thereof before the commencement of this action".

Defendant in its answer admitted the issuance of said policy of insurance for and in consideration of the premiums therein agreed to be paid; denied that any sum became due plaintiff from defendant; denied that said policy ever became effective; and as a special defense alleged that the policy was delivered to insured by defendant for examination only; that, among other things, the policy provided that it should not become effective until the first premium was paid during the good health of the insured and that said premium was never paid during the lifetime of the insured or at any other time, and that said policy never became effective.

On the issues thus formed the cause was tried, the jury returning a verdict in favor of plaintiff for the sum of $10,000. From the judgment entered pursuant to the verdict defendant appeals.

It appears from the record before us that in the latter part of May, 1931, W. L. Ewing, an assistant general agent of

the defendant company, talked to Samuel Feinberg, the insured, at Metro-Goldwyn-Mayer Studios where Feinberg was employed as manager of the musical department, and at the same time talked to Lew Smith, an employee in the same department, regarding their taking out life insurance policies with his company. As result, both men were examined by the company's doctor on or about June 1st, at which time Feinberg signed an application for a $10,000 policy of life insurance, which application was accepted by Ewing and forwarded by him to the home office of the company at Hartford, Conn. Thereafter, the home office asked for further information regarding the insured's weight, and on June 5th Feinberg sent this information to the agent Ewing, and on June 18th the home office of the defendant company issued to said Feinberg a policy of life insurance in the sum of $10,000, at the same time issuing a similar policy to Smith. Both policies arrived in the Los Angeles office of the defendant about June 22, 1931, but were held by the agent Ewing in his desk in the Los Angeles office of defendant until they were delivered to Lew Smith. On the day Mr. Ewing went to the studios to deliver the policies, Mr. Feinberg was not there, and Ewing delivered the Feinberg policy to Smith, who signed a "receipt for policy contract delivered for examination" without reading the same; Smith in turn delivered the policy to Feinberg without mentioning that he had signed the receipt. The record without dispute shows that a few days after Mr. Ewing left the policies with Smith, Ewing returned and picked up Smith's policy.

Ewing testified that he had no independent recollection of the date when he delivered the policies to Smith and depended solely upon the date shown upon the "receipt for policy contract delivered for examination" signed by Smith. This receipt shows an alteration in the date, viz.: an 8 superimposed upon a 7, dash 1, dash 193—. Ewing read the date August 1, 1931. The policy issued to Feinberg remained in Feinberg's possession until his death, which occurred on August 14, 1931, as the result of an accident. Mrs. Feinberg, the respondent herein, testified that the first time she saw her husband's policy was on July 6, 1931, when her husband handed it to her. She said she recalled the date plainly because on July 8th she went into the Santa Monica Hospital for a major operation; that she saw the policy several times

before she went to the hospital and after her return therefrom on July 23, 1931, and that she saw the policy in the drawer where it was kept whenever she had occasion to go there for other things. She also testified that between the 14th and 17th of August she received through the mail a notice of second premium due on the policy.

Appellant contends on this appeal that the evidence is insufficient to sustain the judgment, and that the court erred in the admission of evidence and in the giving and refusing to give certain instructions.

In connection with its first point, appellant maintains that the evidence was wholly insufficient to sustain the implied finding of the jury that the delivery of the Feinberg policy to Smith by the agent Ewing was an unconditional delivery; that, on the contrary, the very great preponderance of the evidence conclusively established the facts that said policy was delivered for inspection purposes only and was not accepted by Feinberg, and that the first premium due thereon was never paid during the lifetime of Feinberg.

The possession of the policy by the insured or by the beneficiary is *prima facie* evidence of its delivery as a valid and subsisting contract, and the burden of overcoming the *prima facie* case made by production of the policy by the plaintiff, in an action to enforce it, rests upon the insurance company. Whether the defendant's evidence did or did not overcome the *prima facie* case thus made by the plaintiff was for the jury to determine. (*Berliner* v. *Travelers' Ins. Co.,* 121 Cal. 451 [53 Pac. 922].) The factual situation of the cited case is similar to that of the case at bar, the defense to the action being that the premium on said policy was never paid, that its payment was not waived, that the policy was never delivered, and therefore never took effect between the parties. It was there testified on behalf of the defendant that the premium was not paid, that no arrangements had been made for credit, that payment had not been waived, and that the delivery of the policy was for the purpose of examination and not as an absolute or unconditional delivery. The court there held that the general agent of a life insurance company may waive the payment of the first premium and deliver the policy, and thereby make it a valid and subsisting contract of insurance, notwithstanding the provision in the policy

that it shall not take effect until the first premium is paid while the insured is in good health.

The jury in the case before us apparently believed that there was an arrangement for credit made between the agent Ewing and the insured, and this belief may have been strengthened by the testimony of plaintiff that she received notice of second payment due on the policy. The notice of second payment was introduced over the objection of defendant company, which it now contends was prejudicial error. The general agent for defendant had already testified that "After the first premium is paid and the home office has been notified of that fact, the original notice of the subsequent premium being due is forwarded by the home office direct to the insured. . . . If the premium was not promptly paid it would be the job of my office to follow up the collection, see that the policy did not lapse; by that I do not mean that the home office sends the notice for the second premium after the first premium has been paid necessarily. They send it when it is due."

While we are not of the opinion that the notice of second payment of premium due amounted to an admission by defendant company that the first premium had been paid,—as is contended by respondent,—we do believe it was sufficient to raise the inference that credit had been extended to the insured by the agent Ewing, and that some credit arrangement had been made by Ewing with the home office of defendant. We do not believe that the admission into evidence of this notice of second payment of premium due amounted to prejudicial error, in view of the testimony of the attaches of defendant company which preceded its admission. We are of the opinion that the evidence adduced on the trial of this action is sufficient to sustain the judgment, and that there was no prejudicial error in the admission of evidence.

We have studied the instructions given and believe that, taken as a whole, they fully and fairly instructed the jury on the various legal phases of the case, and that no prejudicial error resulted therefrom, or from the refusal of the trial court to give the instructions requested by appellant.

The judgment is affirmed.

Doran, J., concurred.

Houser, P. J., concurred in the judgment.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 18, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 19, 1936.