**NEW YORK LIFE INS. CO. v. ROGERS.**

No. 9892.

Circuit Court of Appeals, Ninth Circuit.
March 16, 1942.

As Corrected on Denial of Rehearing
May 12, 1942.

---

Ellinwood & Ross, Everett M. Ross, and Jos. S. Jenckes, Jr., all of Phoenix, Ariz., for appellant.

M. J. Dougherty, John F. Connor, and Dougherty & Chandler, all of Phoenix, Ariz., for appellee.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is an action to recover double indemnity on an insurance policy for $2,000, issued to Zeno A. Rogers by the New York Life Insurance Company, appellant herein.

Rogers was a soliciting agent for the company and had been for three months before his death. He had applied for a policy on his own life six weeks after his appointment as such agent. A policy on his life was prepared in the New York office, dated December 19, 1939, and mailed to Arthur F. Lindberg, the general agent in Phoenix, Arizona. It was mailed to Rogers from the office of D. F. Caskey, cashier of the General Agent.

Zeno A. Rogers died January 28, 1940, as a result of an automobile accident occurring two days before. The policy was found in his hotel room by the General Agent of the company, who took possession of it over the protest of the widow on the theory that it belonged to the insurance company.

On the trial the appellant moved for a directed verdict in its favor. The denial of this motion is assigned as error. The appellant also excepted to the giving of certain instructions to the jury. The verdict was for the plaintiff. We shall first consider the denial of the motion of the appellant for a directed verdict.

The question involved is whether or not this policy was delivered and was effective. That the policy was given to and retained by the insured until his death is admitted. The appellant company claims that the mailing of the policy on his own life to the soliciting agent was the result of a mistake, and was not with intention to deliver the policy to him as an insured.

The possession of the policy by the insured is evidence of its delivery, and the acknowledgment therein contained of the payment of the first premium is evidence of its payment. Yarbrough v. Prudential Insurance Co., 5 Cir., 99 F.2d 874; Feinberg v. Ætna Life Ins. Co., 13 Cal.App. 2d 371, 56 P.2d 1269. The question then is, does the other evidence in the case so completely explain or refute this evidence as to destroy its probative value.

On the question of delivery it appears from the evidence that when Rogers was appointed as an agent a man named Clem had arranged to advance $75 to Rogers and had taken an assignment of his prospective commissions as security. When Rogers afterward applied for his policy, Lindberg told Clem that before any of the commissions earned by Rogers could be paid over to Clem, on account of his advance, it would be necessary to apply them to the payment of the first premium on the policy of life insurance issued to Rogers, but that Clem need not be disturbed about it as Rogers had sold quite a lot of insurance and his commissions would run three or four hundred dollars. The semiannual premium was $40.50. Undoubtedly this statement by Lindberg would justify the jury in finding that there was an intent on the part of the general agent to issue the policy on credit, the first premium to be paid from commissions to be earned by the insured. The question then is, did the general agent, Arthur F. Lindberg, have authority, actual or ostensible, to extend credit to the insured.

The application for insurance, signed by Rogers, provided that the policy should not be effective until it was delivered to the insured and the first premium paid in cash in his lifetime. It also provided that only the president, a vice-president, a secretary, or the treasurer of the company could make, modify or discharge contracts or waive any of the company's rights or requirements. The appellant claims that these provisions gave notice to the insured that the general agent at Phoenix had no authority to extend credit. However, the

evidence showed that in fact the soliciting agents commonly delivered policies of the same sort to applicants without receiving payment of the first premium in cash, the practice being for the agent to take in payment the applicant's note to the agent. The company then looked to the agent for payment of the first premium, less the agent's commission, and not to the applicant.

The company's knowledge of and acquiescence in this practice is shown by the following instruction given by it to its soliciting agents: "Notes. The Company will not accept a note in payment of the whole or any part of the first premium on a policy. The Company will accept cash only in payment of a first premium. If an agent takes a note, he does so at his own risk and must be personally responsible for same. Agents are instructed not to issue a coupon receipt attached to an application in exchange for a note or for anything except cash."

■ It was within the power of the company to waive any of the provisions or restrictions contained in the application or in the policy. This court held in Schwartz v. Northern Life Ins. Co., 9 Cir., 25 F.2d 555, 558, that a stipulation in the application for life insurance "* * * that the insurance should not take effect unless a full premium was paid in cash * * *" was waived where the General Agent of the Insurance Company accepted a promissory note payable to himself and endorsed to the Company as authorized by its rules. We there quoted with approval a statement of the court in Kimbro v. New York Life Insurance Co., 134 Iowa 84, 108 N.W. 1025, 1029, 12 L.R.A.,N.S., 421, as follows: "No general rule adopted by an insurance company as to the prepayment of premiums can take away its power to waive or ignore such requirement and to bind itself by a contract without such payment. * * * It was a common practice known to and approved by the company for agents to take such notes payable to themselves, and charge themselves therewith in their agency accounts, the company holding the agents responsible as for a cash collection. Such a transaction is a payment of the premium as between the assured and the company."

■ To the same effect are the following decisions: New York Life Ins. Co. v. Ollich, 6 Cir., 42 F.2d 399; Peoples Life Ins. Co. v. Whiteside, 5 Cir., 94 F.2d 409; Berliner v. Travelers' Ins. Co., 121 Cal. 451, 53 P. 922; Feinberg v. Ætna Life Ins. Co., 13 Cal.App.2d 371, 56 P.2d 1269. The question is one of substantive law, and must, under the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, be determined in the present case in accordance with the law of Arizona. We find no Arizona authority on the point but see no reason to believe that the courts of Arizona would depart from the prevailing rule exemplified by the cases cited.

■ The company could likewise waive the stipulation in the application for insurance that only the president, a vice-president, a secretary or the treasurer of the company had authority to waive any of the company's rights or requirements, by authorizing other agents to make such waiver, and there was sufficient evidence to go to the jury as to such waiver, as above stated.

■ It follows that the lower court was correct in submitting to the jury the question of whether the general agent had actual or ostensible authority to extend credit to Rogers. The familiar rules on this subject were correctly stated in the instructions given. The second of these instructions, after setting forth circumstances under which the authority of an agent is enlarged by implication, stated that the principal is bound thereby "in the absence of some reason or cause deemed sufficient in law." This qualifying phrase is objected to by the appellant upon the ground that it made the instruction hopelessly vague. We agree that this phrase should have been omitted but, in view of the evidence, we do not see, nor has appellant suggested, how appellant could have been prejudiced by it.

### No Agreement.

It is contended by the Insurance Company that there was no meeting of minds regarding the policy and, consequently, there was no agreement. This contention is based upon the proposition that the policy issued was not the policy applied for and that its provisions were not accepted by the insured in the manner required by the company. The insured having stated in his application that he had participated in aviation and aeronautics was required to file a supplemental statement in which he stated that he had discontinued all flying.

In answer to the question, "To what extent do you contemplate making use of any aircraft and in what capacity?" the applicant replied, "In case of an accident I waive all insurance." The policy issued contained a "Permanent Aviation Clause" as a rider wherein the company limited its liability on the policy in the event of death resulting from the use of aircraft. The rider was more liberal than the applicant's waiver, but as it varied from the terms of that offer in the application it is claimed that its acceptance was necessary in order to effect a binding contract of insurance, and that the retention of the policy by the insured was not sufficient evidence of acceptance because the company required the acceptance to be evidenced by signing the rider. There is no evidence that such a requirement was brought to the attention of the insured.

The court instructed the jury on this subject that if it found that Rogers, in his application, "waived all benefits of his insurance policy in case of an accident in connection with aircraft, then you are instructed that the signature of Zeno A. Rogers to the so-called permanent aviation clause proposed for his further signature was not essential to constitute an enforcible life insurance contract."

■■ The appellant objects to this instruction on the ground that, notwithstanding the fact that the policy was more favorable to the insured than the application required, the company was nevertheless entitled to have the acceptance of the amendment or rider conform to the company's requirement that it be signed by the applicant. We agree with this contention; but the insured, by retaining the policy and rider with his name typewritten thereon in the space for his signature, adopted that typewriting as his signature, and the rider became part of the contract of insurance. Tabas v. Emergency Fleet Corp., D.C., 9 F.2d 648, 649; First National Bank v. Sleeper, 8 Cir., 12 F.2d 228, 230. Since he was not informed that any other form of signature was required, he could not be held subject to such further requirement. Therefore the instruction, though erroneous, was not prejudicial.

■ The third instruction of which appellant complains told the jury that if it found that the policy was mailed to and received by Rogers before his death, or was found after his death among his papers, and that it acknowledged payment of the first premium, those facts would constitute prima facie evidence of a binding contract, "and the burden of proof falls on the defendant to establish, by evidence, some reason regarded by the law as good and sufficient, why the plaintiff should not recover judgment." The instruction should have pointed out to the jury what reasons would be so regarded; but the reasons relied on by the defendant were fully set out in other instructions, and considering all the instructions, we can see no opportunity for the jury to go astray on that subject.

■ Appellant further objects that it was error to instruct the jury that the burden of proof would shift to it under the circumstances referred to. The question of where the burden of proof lies is one of substantive law, as to which the local rule must be observed, under the holding of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196.

■ The Supreme Court of Arizona has recently held that, although the burden of proof on the whole case never shifts, yet when the defendant by its answer admits allegations of the complaint sufficient to make out a prima facie case for the plaintiff, and then alleges further affirmative matters on which it intends to rely, the issues are thereby so narrowed that the burden is on the defendant to show by a preponderance of the evidence the existence of the facts so alleged by it, and an instruction to that effect is not erroneous. Harvey v. Aubrey, 53 Ariz. 210, 87 P.2d 482. This holding is applicable to the case at bar. Moreover, the jury was elsewhere instructed that the burden was on the plaintiff to prove by a preponderance of the evidence the allegations of her complaint. We believe that by these instructions, taken together, the jury was correctly informed of the law on this point.

■ The latter instruction above referred to introduced a new possibility of confusion, in that the complaint alleged payment of the first premium, whereas the case was tried on a theory of waiver of payment and extension of credit. However, no point is made of this by the parties, and another instruction told the jury that the plaintiff did not contend that the first premium was paid in cash. Although

the instructions were neither so clear nor so consistent as could be desired, we believe that, taken as a whole, they were not error.

Judgment affirmed.