## FRANZ v. UNITED STATES CASUALTY CO.

### Civil Action No. 505.

District Court, E. D. Louisiana, New Orleans Division.

March 22, 1943.

John J. Finnorn and Fred A. Middleton, both of New Orleans, La., for plaintiff.

Porteous, Johnson & Humphrey and Clarence F. Favret, all of New Orleans, La., for defendant.

CAILLOUET, District Judge.

This suit was originally brought in the proper State court by a Louisiana resident, as designated beneficiary of the insured under the terms of a $5,000 accident insurance policy issued by the defendant to the late Patrick Joseph McMahon, Sr.

Removal to this Court, of proper venue and jurisdiction, was effected by the defendant foreign insurance company, which has its domicile in New York, but conducts business in Louisiana, with due legal authorization therefor, and trial was had in due course, without jury.

The deceased insured made written application for the insurance policy in question on September 29, 1939, and his death occurred on December 28, 1940. One Fred H. Hauler presented said application to the defendant, United States Casualty Company, through its general agents in New Orleans, Calhoun & Barnes, Inc.; such application was so presented upon the company's stock printed form, which bore its corporate name and New York address, and all answers of the applicant to said form's printed questions were typewritten, presumably as they were made to Hauler by McMahon, who appears to have then signed the completed application.

The policy was thereupon issued, without examination of applicant, by United States Casualty Company, as of date September 29, 1939, by and through Calhoun & Barnes, Inc., its general agents specially authorized so to do; and was for the term of one year, but renewable, with the consent of the insurer, for like successive terms of one year ending on September

29th; however, the insurer was at liberty to cancel the policy at any time by simply notifying the insured, in writing, to that effect and then and there returning him any unearned portion of the advance yearly premium actually paid by him.

The policy, by its terms, insured against loss, including death, "resulting directly and independently of all other causes from bodily injuries sustained during the term" of the policy and "effected solely through accidental means".

In due course, Calhoun & Barnes, Inc., in the declared capacity of authorized representative of United States Casualty Company, issued a policy renewal certificate (upon the company's stock form, bearing its name and New York address) declaring the continuance of the policy in force for twelve months effective from noon, September 29, 1940.

On December 27, 1940, the insured Patrick Joseph McMahon, Sr., at about 1 P.M. (he being then completing his return to his place of business from his noon-day lunch at his family residence, located approximately a mile away), in getting out of his automobile, through the right front door, on to a concrete pavement, slipped or stumbled, which caused him to fall backwards, striking the rear of his head upon the pavement with such force as to immediately render him unconscious; so testified the one eye-witness to the accident. The insured's death occurred at about 10 P.M., on the next day, despite prompt hospitalization and medical care, and on the succeeding day, at 11 A.M., an autopsy was held by the deputy coroner of Orleans Parish, who testified, on the trial, that the insured had suffered a major fracture of the skull extending along and within the suture line of the occipital, parietal and temporal bones, from the left to the right side of the head, and that the cause of death was hemorrhage and shock, his examination having revealed marked subdural hemorrhage and there being no evidence whatever of death from any of other possible causes suggested by the defense, for either the death or the prior fall; as, for instance, apoplexy or heart disease. The burial took place on December 30, 1940, immediately following church funeral services held at 11 A. M.

The law of Louisiana is to the effect that whenever a life, health or accident insurance corporation issues (as here) a policy or contract of insurance without medical examination of the assured by a physician and the agent of said insurer has had opportunity to ascertain the true condition of the health, habits or occupation of such assured, it shall be presumed that the knowledge acquired, or which might have been acquired by the exercise of reasonable diligence on the part of the insurer's agent in securing the application, has actually been disclosed to said insurer; and is further to the effect that it shall be presumed, as well, that the insurer corporation has waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to health, habits or occupation, whenever it appears that the agent of the insurer knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation; such knowledge of the insurer's agent in writing the application, or of its collector in collecting the premiums from the assured, being imputed as notice to said insurer of the true condition of the health, habits or occupation of the assured. 3 Dart's La. General Statutes (1939) § 4118, p. 124, Act 97 of 1908, as amended by Act 195 of 1932, Sec. 1.

The Supreme Court of Louisiana, in Massachusetts Protective Association v. Ferguson et ux., 1929, 168 La. 271, 121 So. 863, had this to say with reference to the purpose of the legislation in question, viz. [121 So. 866]: "The obvious purpose of the statute is to eliminate from judicial consideration all allegations of fraud by insurance companies when called upon to comply with their insurance contracts issued without any medical examination in regard to certain preliminary matters of which, through its agent, it has acquired, or might reasonably have acquired, knowledge prior to entering into the contract. According to the plain provisions of the legislative act, an insurance company cannot claim, in such cases, the forfeiture of the policy on the ground of misrepresentation. To permit it to do so by merely alleging that the insured is guilty of fraud in failing to make true and full answers in his application for insurance would nullify the statutory provisions. * * * In the instant case, the insurance company contracted with full knowledge of our statutory law, and is, therefore, in no position to urge fraud against the claim of the defendant, who is invoking its beneficial provisions."

It is to be noted that there the suit was one by the insurer against the living assured to cancel a certain health and accident policy issued to him some 27 months before; the suit being based upon alleged false statements of the assured, touching the condition of his health, made in his application for the policy, which was issued without medical examination.

Here, the suit is one by the beneficiary under the policy issued by United States Casualty Company to the now deceased assured, and twelve months after such issuance renewed with its consent, although the insurer enjoyed the right, at will, to cancel said policy at any time, with no other obligation resting upon it except to then and there refund the unexpended portion of the advance yearly premium actually paid by the assured.

In the later case of Eagan v. Metropolitan Insurance Company (In re Eagan), 1935, which was before the Supreme Court on a writ of review from the Court of Appeal for the Parish of Orleans, 155 So. 69 (the judgment of which it reversed, 181 La. 16, 158 So. 575), the policy there in question had been issued without medical examination, on January 16, 1933, in response to application therefor dated January 2nd, and upon the advance payment of the required premium on January 10th; upon which last date the applicant appeared to be in sound health and he, by his former answers to the usual questions in the application, having represented himself to so be—not suffering from any diseases enumerated in such application, and, in particular, not suffering from cancer.

However, on January 11th, he entered Charity Hospital and an examination revealed that he was suffering from cancer of the bladder which caused his death on January 29, 1933—27 days after his application, 19 days after the advance payment of premium, and 13 days after issuance of the policy.

The insurer resisted the claim for recovery under the policy on the asserted ground that, under the above-recited circumstances, such policy was "null and void ab initio". The claimant contended that the failure to exact a medical examination of the insured raised the presumption of waiver of all question as to the state of his health, and precluded the insurer from interposing any defense on that ground. On the other hand, the company urged that Act 97 of 1908 could not fairly be applied because the agent who solicited the insurance "did not have a reasonable opportunity to ascertain the true condition of the deceased's health, and could not have discovered the disease by the exercise of reasonable diligence, since only a medical examination could have revealed its existence."

The Supreme Court held that if the soliciting agent had opportunity to ascertain the true condition of the applicant's health by a medical examination and failed to so do, then the company could not forfeit the policy on the ground of fraud or of misrepresentation in the application; remarking that the applicant then lived in New Orleans (as also did the applicant McMahon, in this present case) "where hundreds of physicians are available at any time for medical examination" [181 La. 16, 158 So. 577]; and that while the agent, who frequently saw the applicant prior to the policy's issuance, observed nothing unusual in his appearance, this did not justify failure to make use of the available opportunity to ascertain the true condition of the applicant's health, by means of a medical examination.

Reverting now to a consideration of the accident and death which befell the insured Patrick J. McMahon, Sr., the record reveals that due notice of such accident was promptly imparted to Hauler and by him to Ben B. Brill, claims adjuster in the employ of Calhoun & Barnes, Inc., and that Hauler likewise had prompt notice of the insured's death a considerable time before the holding of the autopsy at 11 o'clock A.M. on December 29, 1940; but Brill, the claims adjuster, appears not to have been advised by Hauler of such death until about 9 o'clock A.M. on the 30th—2 hours before the body was removed to the church where the funeral services were held.

Within the time limit prescribed by the policy terms, proof of loss was filed by the beneficiary, who was advised, however, on February 26, 1941, that the United States Casualty Company denied liability.

In due course, this suit followed, and by original answer and two supplemental answers the defendant company pleaded, particularly:

1. That the policy involved was not issued "through a duly authorized agent soliciting the same";

2. That said policy was actually "solicited and caused to be written by Fred J.

Hauler, a friend of Patrick Joseph Mc-Mahon, Sr., for many years.";

3. That said Hauler "was not an agent of the United States Casualty Company but an independent broker and under the law of Louisiana, a broker is the agent for the applicant or assured."; and

4. That the proof of loss was incomplete inasmuch as a certified copy of the proceedings of the coroner's inquest was not furnished nor did the attending physician answer interrogatory 7 reading as follows, viz.: "What were the nature, duration and severity of such illnesses or injuries for which the deceased consulted you or any other physician?"; and, in the alternative,

5. That, although the policy specifically provided that defendant should have the right and opportunity to make an autopsy, nevertheless the beneficiary, without the knowledge or consent of defendant, caused the autopsy of December 29th, 1940, to be made with the result, allegedly, that the brain and heart of the deceased "which would have disclosed important material evidence * * * as to the cause of death" were destroyed; that "the right and opportunity to be present at an autopsy or the right and opportunity to make an autopsy as directed by the insurance policy is a condition precedent to recovery"; that the said breach of condition "and the destruction of material evidence, particularly the destruction of the brain and heart" deprived defendant of its right and opportunity to make an autopsy; that defendant would have exercised such right and opportunity but for the fact that nothing could have been accomplished thereby because, allegedly, of the destruction aforementioned; and that, therefore, defendant denied liability, on this alternative ground, if the policy were not adjudged to have been "null and void by reason of the fraudulent answers made" by Patrick Joseph McMahon, Sr., in his application for the policy, as alleged by defendant.

The claimed fraudulent answers were:

1. Affirmative responses to inquiries

(A) As to whether the applicant was in sound condition physically and mentally.

(B) As to whether his habits of life were correct and temperate.

2. His answer that he had suffered from rheumatism and colds, in 1934, for two to three weeks; by way of response to the inquiry as to whether or not, within the preceding five years, the applicant had sustained any "sickness or disease or bodily injury or any other departure from good health"?

3. His answer "Yes appendicitis 20 years ago" to the inquiry: "Have you consulted a physician or taken treatment during the past two years, and have you ever had or been advised to have an operation"?

These answers of the applicant, defendant alleged, were knowingly false and fraudulent and were made for the deliberate purpose of concealing the truth and defrauding the insurer.

Whatever evidence the record contains on the subject of these alleged false and fraudulent answers was admitted over and subject to proper objection thereto seasonably made on behalf of plaintiff; and it may be said in passing that defendant's contention as to the first two answers and the fourth is utterly baseless, inasmuch as, first, nothing indicates that, at the time of making application on or about September 29, 1939, Patrick Joseph McMahon, Sr., was not in sound condition physically and mentally and that his habits of life were not then correct and temperate. Fred J. Hauler, the defendant alleges, solicited his application and was his friend of many years; this fact tends to negative the charge that the applicant knowingly, and with fraudulent purpose, hid the then existent true situation as to his condition and habits. And this does not take into consideration, of course, the fact that the defendant signally failed to discharge the burden of proof resting upon it.

The fourth answer objected to by the defendant may have been intended to mean, "Yes, I consulted a physician (or took treatment) during the past two years, and I was operated upon (or was advised to be operated upon) for appendicitis 20 years ago." If that, then defendant's objection falls of its own weight. If such answer was intended to be by way of reply only to the second of the questions incorporated in the interrogatory, then no answer was made to the question "Have you consulted a physician or taken treatment during the past two years (?)".

 If failure there was to answer the first of the two questions which the insurer sought to propound by its own compound sentence (3, supra), the defendant must now be held (as it is) to have waived the right to require answer, when it accepted

the application faultily made, and thereupon issued the policy.

■ Therefore, it follows from all of the foregoing that even were the conditionally-admitted evidence now adjudged to be proper and given full effect, this would in no wise serve to prove the defendant's contention that applicant's answers to the several questions, just considered, were knowingly false and fraudulent; and, of course, the insurer carries the burden of establishing facts which relieve or limit liability under the policy. Massachusetts Protective Association, Inc., v. Ferguson et ux., 1929, 168 La. 271, 121 So. 863.

There remains to be considered defendant's further contention that the applicant's answer to the query: "Have you within the past five years had any sickness or disease or bodily injury or any other departure from good health? If so, state what and when, and duration.", was likewise knowingly false and fraudulent and intended to deceive and defraud, because in the evidence objected to but admitted subject to the objection, appears three hospital records dated July 2, 1937, February 4–6, 1938, and April 12–14, 1938, respectively, showing that in 1937, the applicant had received one "accident" treatment for a condition reported as diagnosed "Partial Avulsion of Left Ear; Abrasion of scalp.", and in 1938, for conditions reported as diagnosed "Acute Alcoholism (D.T.)" and "Intoxication; Chronic Alcoholism", respectively.

The policy involved in this suit having been issued, admittedly, without medical examination, defendant seeks to avoid the legal effect flowing therefrom by contending that Fred J. Hauler was not the agent of United States Casualty Company in writing the McMahon application therefor, nor the collector of said company in collecting the premiums thereon, but that he was an independent broker and as such, under the law of Louisiana, was the agent of the applicant and assured.

It is admitted that Hauler did solicit the application of September 29, 1939, and did, on December 1, 1940, personally execute and sign a receipt to the assured marked "accident policy", in the sum of $48.75. That payment evidently applied to the policy's one year renewal term from September 29, 1940, inasmuch as the policy, itself, acknowledged receipt of the initial premium covering the first year term up to said September 29, 1940.

It is also admitted that said Fred J. Hauler, during the years 1939 and 1940, and continuously thereafter until (at least) the filing, on June 3, 1941, of defendant's answers to plaintiff's request for admissions, maintained as his only place of business, an office and desk room in the offices of Calhoun & Barnes, Inc., 308 Camp Street, New Orleans; that his telephone, as it appeared listed during the whole of the aforementioned period, in succeeding telephone directories, was the telephone of said general agents of the United States Casualty Company; that he paid neither for said office and desk space nor any part of the rental of said telephone; that he received a commission from Calhoun & Barnes, Inc., on all premiums on policies solicited by him and written in any of the several companies represented by Calhoun & Barnes, Inc., as general agents; that an open account covering such insurance premiums was and is still maintained between said Hauler and Calhoun & Barnes, Inc., and due settlement for earned commissions are regularly made to said Hauler, who accounts for all premiums collected through him; and that many premiums relating to policies secured by his solicitation and then written by Calhoun & Barnes, Inc., with companies for which they serve as general agents, are actually collected by the employees of said general agents, i.e. S. M. Siblen and claims adjuster Ben B. Brill—plaintiff averring that as to all premiums referred to hereinabove, they are paid indiscriminately to Fred J. Hauler or to the office employees of Calhoun & Barnes, Inc., while, on the other hand, defendant insists that collections are effected only by Hauler or for him during his absence from office, as a matter of accommodation to him and his clients, and at his request and authorization.

The law of Louisiana provides for the licensing of the fire insurance broker (3 Dart's La. General Statutes, § 4192, p. 187—Section 1, Act 276 of 1914), but a later statute (Act 348 of 1938) which deals with insurance matters, including restrictions on the division of commissions of agents and brokers, specifically provides that said Act shall not apply to "policies of life, endowment, or personal accident or health insurance". 3 Dart's La. General Statutes § 4278.2, p. 231—Section 2, of said Act 348 of 1938.

Conceding for the present purposes (though not so deciding) that Fred J.

Hauler legally occupied the status of broker with reference to the accident policy application, admittedly solicited by him of his friend of many years' standing, Patrick Joseph McMahon, Sr., then under the general law, and, particularly, the law of Louisiana, Hauler "the broker" was an intermediate negotiator between the parties to the transaction of issuing the accident policy, here involved; he was then the agent (if "broker") of both McMahon and United States Casualty Company; he had in his possession that company's stock printed application, with its name and address appearing thereon, and this he used to initiate the transaction between the two contracting parties which ended in the issuance of the company's accident policy upon the payment of the premium therefor by McMahon; by his conduct towards McMahon, who he caused to make use of said application, to answer its questions, and to sign the same, so that he might thereupon present it to United States Casualty Company for action by and through its duly authorized general agents, Calhoun & Barnes, Inc., Hauler represented himself to McMahon as agent of said United States Casualty Company.

Hauler's engagement, as "broker", was double and required him to observe the same fidelity towards both parties and "not favor one more than the other".

If "broker" he was, then was he agent of United States Casualty Company, so soon as, acting by and through its acknowledged duly authorized general agents, Calhoun & Barnes, Inc., it elected to come into the transaction suggested by McMahon's application; if, as a matter of law, the furnishing to Hauler by its said general agents of its stock printed form of application for the specific purpose of encouraging the soliciting of accident insurance business for it (as appears to have been the case here) did not otherwise constitute him soliciting agent quoad any application that he secured and which was then accepted for the company's benefit and advantage by said Calhoun & Barnes, Inc. 32 C.J. (1923) Insurance, § 130, pp. 1055, 1056; 12 C.J.S. (1938), Brokers, § 3, pp. 8, 9; La. Rev. Civil Code Arts. 3016, 3017; Smith v. Blache, 1932, 19 La.App. 594, 140 So. 147.

■ The McMahon accident insurance policy having been so issued by United States Casualty Company without medical examination of the assured by a physician and said agent of the insurer having had opportunity to ascertain the true condition of the health and habits of the assured, it must be presumed that the knowledge acquired by Hauler, friend of McMahon, or which he might have acquired by the exercise of reasonable diligence, was disclosed to said insurer; and it must likewise be presumed that such insurer corporation has waived its rights to claim a forfeiture of said policy based on the ground that McMahon did not make true and full answers in the application as to any departure from good health within the five years next immediately preceding the date of his application, because Hauler, the agent, as aforesaid, knew or might have ascertained by the exercise of reasonable diligence the real facts; and the same may be said of Hauler's knowledge, as collector of premiums, for the primary term and the renewal term, respectively; assuming that both were actually collected by him and not by the insurer's general agents, Calhoun & Barnes, Inc. If collection of either or both premiums was effected by such general agents, then, a fortiori, does Louisiana law preclude United States Casualty Company's attempted defense of forfeiture of policy on the ground of fraud and misrepresentation in the application.

■ Passing now to defendant's contention that the submitted proof of loss was incomplete, it need only be observed that United States Casualty Company having (within the time period prescribed for presenting such proof of loss) denied liability on grounds not relating to the proof, must be deemed to have waived the claimed insufficiency or defect, i.e., failure to furnish a certified copy of the proceedings of the Coroner's inquest, and failure of the attending physician to answer interrogatory 7 (see 4, supra). 29 Am.Jur., Insurance, § 1143, p. 859 (1940); Knickerbocker Life Ins. Co. v. Pendleton et al., 1885, 112 U.S. 696, 5 S.Ct. 314, 320, 28 L.Ed. 866; Craten v. Aetna Life Ins. Co. of Hartford, Conn., 1937, 186 La. 757, 173 So. 306, 308.

■ Finally, the alternative defense is without merit. In its original answer, defendant asserted no rights under the policy terms relating to an autopsy and, as a matter of fact, after having already denied liability under the policy on other grounds which it formally set up in said original answer, defendant, at the same time, alleged that the proof of loss was incomplete in that there had not been furnished a certified copy of the proceedings of the

coroner's inquest, to the making of which inquest and autopsy no objection was then urged.

The autopsy policy terms were no more than these viz.: "8. The Company shall have * * * the right and opportunity to make an autopsy in case of death where it is not forbidden by law."

Concededly, such making of an autopsy is not forbidden by Louisiana law, but the defendant made no request for such an autopsy. Aside from the fact that Brill, Vice-President and in charge of the Claim Department of Calhoun & Barnes, Inc., the general agents of the United States Casualty Company, testified that during his 15 years of service with Calhoun & Barnes, Inc., no autopsy was ever held, or requested to be held, on the body of any deceased policy holder, defendant's own pleadings are to the effect that United States Casualty Company would actually have exercised its right and opportunity to make an autopsy on the body of the deceased McMahon but for the fact that, in view of the prior making of the autopsy of December 29, 1940, and the destruction of "certain organs * * * which would have disclosed important material evidence * * * as to the cause of death, * * * particularly the brain and heart" defendant concluded that "nothing would have been accomplished thereby".

The foregoing is alleged in defendant's first supplemental answer which was filed nearly seven months after its original answer and clearly reflects an afterthought. Over a year after such filing, the pleading was reiterated—but merely as an alternative plea—when a successor counsel of record obtained leave to so amend and plead in the alternative by the filing of the second supplemental answer.

The defendant, let it be noted, does not contend that it had no opportunity to exercise its claimed right, but only that it concluded not to do so, because the alleged destruction, notably of both brain and heart, made it certain that "important material evidence" as to the cause of death which would otherwise have been revealed thereby had been rendered no longer available by reason of the beneficiary's having caused her alleged own autopsy to be made without defendant's knowledge or consent.

It suffices to say that not only were not the brain and heart destroyed, each having been replaced in its usual position in the body, but the deputy coroner positively

swore that the autopsy performed by him definitely established the cause of death to be that officially reported by him, as aforesaid. Defendant made no attempt to prove that any other material evidence would have been disclosed by such autopsy as it, otherwise, might have had opportunity to first make.

Futhermore, there is no suggestion made, of course, that such autopsy was performed for the purpose of concealing the true cause of death; which, in truth, the evidence shows to have been ascertained by the autopsy alone.

■ The right to make an autopsy such as was provided for by the McMahon policy should be interpreted as permitting the insurer to have an autopsy, with consent of those entitled to give it; or, upon their refusal, by proper order of Court.

■ Such a policy clause, as said the Court in a case on appeal from the Western District of Louisiana, i.e. Travelers Insurance Co. v. Welch, 5 Cir. 1936, 82 F.2d 799, at page 802, " * * * does not affect the risk, but applies only after a loss and is concerned with the proof or disproof of the loss. Breach of such a post-loss right, no matter how clearly reserved in the policy, is usually held not a bar to the insurance unless expressly made so. * * *."

 \* \* \* \* \* \*

" * * *. It ought to be treated as intended not as a means of evading liability, but rather as a means of getting evidence of the truth. Only for the latter purpose is it consistent with sound policy. When the circumstances do not indicate any fraudulent burying of the truth or any likelihood that important evidence would be discovered by dissection even of an unburied body, courts ought to be slow, as they have been, to defeat insurance on account of this provision. * * *."

In view of the premises, the Court's formal findings of fact and conclusions of law are, viz.:

### Findings of Fact.

1. The United States Casualty Company Accident policy NLA 4251 of September 29, 1939, issued to Patrick Joseph McMahon, Sr., and subsequently renewed for twelve months effective September 29, 1940, was in full force and effect on both December 27th and 28th, 1940.

2. Under the terms of said policy Patrick Joseph McMahon, Sr., was insured

against "loss resulting directly and independently of all other causes from bodily injuries * * * effected solely through accidental means"; and in the event of death from such injuries so effected, $5,000 was made payable to his designated beneficiary Mrs. Louise Franz McMahon, his wife, now plaintiff herein.

3. Said insured died on December 28, 1940, from injuries so effected on December 27, 1940, and there was due compliance with the policy terms, relating to notice of accident and of resultant death.

### Conclusions of Law.

1. Plaintiff Mrs. Louise Franz McMahon, widow of the deceased insured Patrick Joseph McMahon, Sr., and his designated beneficiary under the above mentioned accident policy of September 29, 1939, should be paid the principal sum of $5,000 "for loss of life", as the insurer contracted to pay under the policy terms; together with 5% per annum interest from December 28, 1940, until paid.

Let judgment be entered accordingly.