Ann E. LATTIMORE, Plaintiff,

v.

MERCHANTS FIRE ASSURANCE COR-
PORATION, Defendant.

No. 35692.

United States District Court
N. D. California, S. D.

May 14, 1957.

Reginald G. Hearn, San Francisco, Cal., for plaintiff.

Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for defendant.

HARRIS, District Judge.

Plaintiff seeks to recover from defendant under a personal property floater insurance policy which she carried with defendant for some ten years prior to the particular loss involved in this action. The policy was renewed in 1955 for a three-year period. The total amount of the policy was some $48,000; the particular items for which recovery is sought represent only a small percentage of the face amount.

Plaintiff, a collector of objects of art, has filed a claim for loss and damage on certain items of *scheduled* fine arts, including statuary, vases, dolls, bric-a-brac. She also has presented a claim for loss and damage on *unscheduled* property for which her policy provides maximum recovery in the amount of $9950, this being the estimated value of the unscheduled

personal property. The loss occurred in storage, and while moving the property from storage to the apartment of plaintiff.

Defendant has resisted both the claim on the scheduled fine arts—disputing the total value of the damaged articles —and the unscheduled property. With respect to the latter, defendant denies all liability, contending that plaintiff misrepresented and concealed a material fact in obtaining the insurance on the unscheduled property, and that such concealment represents a complete defense.

The dispute as to plaintiff's recovery for her loss of scheduled fine arts arises because of the difference between the parties as to the value of certain damaged objects of art. Defendant concedes that plaintiff is entitled to receive $2,269 which is the agreed value of certain missing or out of sight objects. Defendant further concedes that plaintiff is entitled to recover $2,070.45 which is the *depreciated* value of certain damaged objects of art.

Defendant's value of the damaged articles is based on a formula utilized by plaintiff's art expert, Mr. Langman, and defendant's representative during negotiations for settlement·of claims under the policy. The formula provided for an allowance of 10% of the value of the objects as the estimated cost of repairs, plus an additional 33⅓% for depreciation in value resulting from the damage.

Plaintiff contends that an object of art has no value as such once it has been damaged. Accordingly, she asks for the full insured amount of the damaged articles, namely $4,815.

■ The evidence supports plaintiff's claim that ordinarily an object of art (unless a masterpiece and unique), loses its full insured value when it is damaged. Any worth which the object may have thereafter is not that of an "object of art." Such is the undisputed testimony of Mr. Langman.

His qualifications were conceded by the defendant and no attempt was made to rebut his expert testimony. The set-tlement formula he advanced was significant only as a factor, or possible basis, for compromise of the claim.

■ The formula proposed on settlement cannot be used as a yard-stick of value, to be applied by this court, after litigation ensues of an expensive and protracted nature. In view of the nature and extent of the damage occasioned the bric-a-brac and other objects of art, the award must be predicated on a total loss, to-wit: $7084.

The defendant is entitled to recover from plaintiff the damaged articles and objects of art for salvage purposes and to reimburse itself in such amounts as may be obtained from any recovery thereon.

Regarding the unscheduled property:

Plaintiff seeks recovery in the total amount of $9,950 which sum concededly represents a lessor amount than the loss suffered by plaintiff by reason of damages and loss of insured personal property. Plaintiff has proven total values of unscheduled property in the amount of $36,500 and defendant has stipulated that such sum represents the actual values. Thus, there is no dispute as to plaintiff's right to recover the full amount of insurance set forth in the policy, to-wit: $9,950, unless the defense of concealment and misrepresentation of a material fact is applicable.

■ Plaintiff's insurance policy provides under the heading "Conditions" the following: "This policy shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof. * * *" Defendant contends that plaintiff's failure to disclose the full value of the unscheduled property was such a concealment or misrepresentation of a material fact as to make the policy void.

The evidence discloses that good insurance practice requires personal property floater policies to be limited to property set forth in the amount of at least 80% of its estimated value. Defendant observes that a floater policy must neces-

sarily have high premiums because of the risk attached and that the premiums are based on total value of all personal property owned by the insured. Normal losses suffered represent only a small percentage of total property owned. If premiums are paid on the basis of the estimated actual losses, then insurance companies, it is urged, cannot afford to carry the potential risk entailed on floater policies.

Plaintiff denies that she misrepresented or concealed any material fact. The policy itself is silent regarding the asserted insurance practice that the insured list at least 80% of the estimated value of the unscheduled property which is to be covered. She further states that the written instrument fails to inform an insured of the necessity of setting forth the total value of all personal property.

The defendant has failed in sustaining the burden of proof as to the affirmative defenses. Franz v. United States Casualty Co., D. C., 49 F.Supp. 267; Mayfield v. Fidelity & Casualty Co., 16 Cal. App.2d 611, 61 P.2d 83; Feinberg v. Aetna Life Insurance Co., 13 Cal.App. 2d 371, 56 P.2d 1269. As stated in the Franz case, 49 F.Supp. at page 272: "The insurer carries the burden of establishing facts which relieve or limit liability under the policy." There is no evidence upon which this Court may predicate a finding that the plaintiff at any time misrepresented or concealed a material fact, or otherwise represented to the defendant, as a warranty, that certain values did or did not exist.

Charles Kaine, a witness produced by the plaintiff with many years' experience in the insurance business as an employee, adjuster and broker, testified categorically that the estimate of value in a personal property floater insurance policy was never considered a warranty, but was merely an approximation; that during his experience as chief claims adjuster for large insurance companies he had several claims in cases wherein the declared value of personal property was $10,000, but at the time of the loss

it was determined that the value should have been fixed or set at $20,000; in short, double the amount of the declared value. The declared value was paid.

Also, it is significant in determining the materiality of the so-called "representations" or "warranties" as to value, that plaintiff had been paying premiums to the defendant for a long period of time on approximately $14,000 worth of furs and jewelry which had long since been disposed of. Plaintiff argues that this circumstance negatives any claim or assertion that plaintiff sought to undervalue or understate the total amount of personal property.

Moreover, it should be considered that a representative of the defendant company, Mr. Bailey, testified that the defendant commenced using a questionnaire for personal property floater insurance in the year 1950. The form of questionnaire was introduced in evidence and stated that the applicant must declare at least 80% of the estimated value of the insurance. Bailey testified that at no time did he request the plaintiff or the plaintiff's representatives to complete or otherwise fill out such a questionnaire. In connection with this latter testimony it should be observed that Bailey admitted that he knew that the valuations were not correct and knew or should have known of specific, unintentional under-evaluations as to certain properties and classifications thereof.

The foregoing references to the transcript make it abundantly clear that whatever generalizations defendant may make as to legal principles, the factual background does not support any misstatement, intentional or otherwise, or misrepresentation or warranty, upon the part of the plaintiff regarding the value of the properties.

It appears from the record that an impasse was reached or created during the negotiations. Ill will was engendered. Plaintiff, a valued client of the defendant, saw fit to cancel all of her insurance and place the same with another or competing company. Also, she terminated relationship with her insur-

ance broker. This background may be significant in appraising the reasons underlying defendant's rejection of the major claim upon a basis or theory which had never been advanced in the past. Defendant claims this is a case of first impression.

■ If, as the defendant contends, the practice or custom of setting forth at least 80% of the value of the floater items to be insured is of such significance, and so vital to the successful operation of their business, then it would seem expedient to incorporate the terms and conditions in simple and concise language in the body of the policy; thus permitting the parties to know and appreciate the full terms of their reciprocal obligations. To incorporate the practice or usage into the contract by innuendo or inference would require the Court to construe the contract and the terms thereof against the insured and in favor of the insurance company. It is uniform law that if the insurer fails to use such appropriate language as to make the provisions of the contract clear and unambiguous, then any uncertainty or doubt is to be resolved against it. National Bank, etc. v. Union Insurance Co., 88 Cal. 497, 26 P. 509; American Cent. Life Insurance Co. v. American Trust Co., 6 Cir., 5 F.2d 71; Coniglio v. Connecticut Fire Insurance Co., 180 Cal. 596, 182 P. 275, 5 A.L.R. 805.

■■ There is no claim made herein that the insurance contract is ambiguous; nor is the contention urged that extrinsic evidence must be resorted to in aid of interpretation. The arguments advanced by defendant center on the premise that a custom or practice known generally by the agents and brokers, must be insinuated and incorporated into and made a part of an otherwise clear and unambiguous contract.

Established legal principles do not support the contentions. If a clear, positive and unambiguous contract is executed, then custom, usage or practice cannot be used to vary, enlarge or otherwise alter the terms. Grace v. American Central Insurance Co., 109 U.S. 278, 3 S.

Ct. 207, 27 L.Ed. 932; Aetna Insurance Company v. Sacramento-Stockton Steamship Co., 9 Cir., 273 F. 55, 59.

Judgment may be entered in favor of the plaintiff in the amount of $9,950, representing the total loss as to the unscheduled properties; with respect to the loss occasioned to the specific items of bric-a-brac, objects of art, etc., judgment may be entered in the amount of $7,084, together with interest on said amounts. Defendant to receive the amount of salvage on damaged articles as hereinabove provided.

Findings may be prepared in accordance with the foregoing.